711 P.2d 1200

**In the Matter of the Appeal in PIMA COUNTY JUVENILE ACTION NO. J–78632.**

**No. 2 CA–CIV 5181.**

Court of Appeals of Arizona, Division 2.

Feb. 27, 1985.

Ann M. Haralambie, Tucson, for appellants.

John William Lovell, Tucson, for appellee Bennett.

Childrights, Inc. by Edith A. Croxen, Tucson, for appellees minor children.

Robert K. Corbin, Atty. Gen. by Joan R. Mendelson, Tucson, for appellee Arizona Dept. of Economic Sec.

## OPINION

BIRDSALL, Chief Judge.

This appeal was taken from the order of the juvenile court adjudicating the minors to be dependent, awarding their legal custody to the Department of Economic Security (DES), and continuing their physical placement with their maternal grandfather, appellee Bennett. The following facts are pertinent to our disposition.

The juveniles, nine- and seven-year-old sisters, and their parents were residents of Arkansas and apparently lived on and off with the appellants, Vera and Robert McGough. On September 12, 1982, the parents and the children were involved in an automobile accident. The father was killed and the mother suffered injuries which resulted in her death several months later. The children also suffered serious injuries which required them to be placed in body casts for several months. They were hospitalized for two months and upon leaving the hospital returned to the home of the McGoughs, who cared for them during and after their convalescence. After the mother's death, the McGoughs petitioned the Arkansas courts for appointment as guardians of the children. The petition was opposed by Mr. Bennett. The

McGoughs prevailed, however, and were appointed guardians sometime in June, 1983.[1] The court's decree required them to send the children to Bennett for a two-week visitation in July 1983, which they did.

According to Mr. Bennett and his wife, the children's stepgrandmother, the children were discovered upon their arrival to be dirty and to have bruises on their legs and buttocks consistent with beatings inflicted by a belt. Because of this, and because of statements made to them by the children, the Bennetts concluded that the children had been mistreated by the McGoughs. Instead of returning the children to Arkansas at the end of the scheduled visitation, they filed a petition in juvenile court to adopt the children.[2] The record does not reflect the status of that proceeding, which is not a matter before this court. Thereafter, on September 28, 1983, Mr. Bennett filed a dependency petition in juvenile court alleging, inter alia, that the children had been sexually abused by a friend of the McGoughs and subjected to severe disciplinary methods by the McGoughs. The petition was accompanied by the reports of a psychologist and therapist who had evaluated the children. The report concluded that "[t]here is too much evidence, sexual abuse, neglect and physical abuse to return them to this very unstable environment," and recommended that the children remain with the grandparents "until a considered judgment can be rendered in this complicated case."

On October 17, 1983, DES filed a "Joinder in Dependency Petition," reiterating basically the same allegations as the Bennett petition, based on the investigatory report of a DES caseworker. On October 21, the juvenile court entered temporary orders making the children temporary wards of the court, awarding temporary legal custody to DES, and giving temporary physical custody to Mr. Bennett.

Immediately thereafter, the McGoughs filed a motion to dismiss the petitions, arguing that the court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401 to 8–424 (1984 Supp.), and the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1984 Supp.). The McGoughs argued, alternatively, that even if the court were authorized under the Uniform Act to exercise emergency jurisdiction, it could do so only for a limited period of time—specifically, until the petitioners filed a dependency petition in Arkansas, the children's home state. The motion was accompanied by the affidavit of Norma Snow, County Director of the Arkansas Department of Human Services, Division of Social Services, who stated that she had worked with the children, their parents, and the McGoughs for more than three years. She further stated:

"Without question, Arkansas Social Services will re-enter this cause and conduct a full investigation [of the alleged sexual abuse] once the allegations have been forwarded to Arkansas Social Services or to the Probate Court of Cleburne County, Arkansas, the Court with continuing jurisdiction over the guardianship of these minor children. Through the protective services of the Arkansas Division of Social Services, these children, upon their return will be assured all of the protection available by the State of Arkansas, and will not be placed in the position of any potential harm or furtherance of abuse until such time as a complete investigation has been conducted. I would urge the Juvenile Court or Juvenile Investigative Agency for the Juvenile Court of Pima County, Arizona, to contact my agency and me personally to confirm our position in this matter and to be able thus to assure themselves that the children will be adequately protected upon their return to the State of Arkansas."

---

1. Mr. Bennett appealed, but the decision was apparently affirmed by the Arkansas Supreme Court.

2. Mr. Bennett was apparently subsequently ordered by the Arkansas court to return the children to Arkansas and was held in contempt for his failure to do so.

The motion was opposed by the petitioners and denied by the juvenile court. At the same time, the court granted the DES motion to amend its prior pleading so as to constitute a separate petition for dependency, alleging sexual, physical, and emotional abuse of the children, not joined in any way with Bennett's petition.

A contested hearing was held in February, 1984, when testimony was taken from the children, the McGoughs, the Bennetts, three evaluating psychologists, and other witnesses. On April 16, the court entered its findings of fact and conclusions of law. The court found that while the children were recovering from the death of their parents and their own physical injuries, they "were subjected to regular and frequent physical discipline by the McGoughs including being struck by hand, belt, switch, flyswatter and ruler" and "on a regular and frequent basis as part of the discipline imposed by Mr. and Mrs. McGough, ... made to stand in a corner, made to stand with their nose [sic] to a door knob, and sent to their room as punishment." The court further found that the children had been sexually abused by a friend of the McGoughs, who was "a welcome visitor and guest at the McGough house," and that the children had been left in his exclusive custody on several occasions for periods up to one hour. Finally, the court found that the McGoughs "had occasion to see Melanie kiss [the friend] briefly on the lips and sit on his lap and did not discourage such behavior."

On the basis of these findings, the court concluded that the discipline imposed by the McGoughs constituted "cruelty" within the meaning of A.R.S. § 8–201(11)(b). Alternatively, the court concluded that the children were in need of proper and effective parental care and control and had no parent or guardian willing or capable of exercising such care and control. The court adjudicated the children dependent, awarded their legal care and custody to

DES, and ordered their concurrent physical placement with the Bennetts to continue. The matter was set for review on October 10, 1984.[3] The McGoughs appealed, arguing that (1) Arizona either did not have jurisdiction or should not have exercised jurisdiction, pursuant to the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act; (2) the court erred in refusing to admit evidence concerning the natural parents' disciplining of the children; (3) the court erred in refusing to admit evidence concerning disciplinary techniques in common usage in Arkansas; and (4) the evidence was insufficient to support a finding of dependency.

Although not raised by the parties, we first address the nature of the juvenile court's disposition order, which awarded legal custody to DES and physical custody to the maternal grandfather. Pursuant to Article 6, § 15 of the Arizona Constitution, the power of the juvenile court to make a particular disposition of a child subject to its jurisdiction is "as provided by law." This has been construed to limit the powers of the juvenile court to those expressly granted by the legislature, specifically, as set forth in A.R.S. § 8–241. See *Appeal in Maricopa County Juvenile Action No. J–86843*, 125 Ariz. 227, 608 P.2d 804 (App. 1980); *State v. Collins*, 122 Ariz. 550, 596 P.2d 385 (App.1979). With regard to children who have been adjudicated dependent, the statute authorizes the juvenile court to award legal custody:

"(a) To the care of his parents, subject to the supervision of the state department of economic security.

(b) To a suitable institution.

(c) To an association willing to receive him.

(d) To a reputable citizen of good character.

(e) To an appropriate public or private agency licensed to care for children.

(f) To a suitable school.

**3.** The review hearing was held, over the jurisdictional objections of the McGoughs in light of the pending appeal, and the court ordered that the original custody order remain in effect subject to review on October 2, 1985.

(g) To maternal or paternal relatives, as guardian of the person, provided they are physically and financially able to provide proper care.

(h) To the protective supervision of a probation department subject to such conditions as the court may impose.

(i) To supervision under the independent living program established pursuant to § 8-521." A.R.S. § 8-241(A)(1) [4]

■ We see nothing in this statute which would authorize the disposition order issued in this case awarding legal custody to DES. If the parents of the children were involved, then arguably the order could be construed as coming within the language of subsection (a). Even this subsection, however, does not authorize the granting of legal custody to DES, but merely subjects the exercise of custody by the parents to the supervision of DES. Indeed, none of the quoted subsections authorize the award of legal custody of dependent children to DES. Absent such authority granted by the legislature, the juvenile court's order was void.

■ As noted above, the McGoughs contend that the juvenile court had no jurisdiction to render any order in this case. The parties agree that jurisdiction is governed by the Uniform Child Custody Jurisdiction Act,[5] which enumerates four circumstances under which our courts are vested with jurisdiction to make a custody determination, defined to include dependency proceedings, by initial or modification decree:

"1. This state is the domicile or the home state of the child at the time of commencement of the proceeding or had been the child's domicile or home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

2. It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.

3. The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

4. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction." A.R.S. § 8-403(A).

■ The first responsibility of the juvenile court was to determine whether or not it had jurisdiction to hear the matter under one of these provisions. Contrary to Mr. Bennett's contentions, paragraph 1 is inapplicable to this case because Arizona was not the domicile or home state of the children at the time the proceedings were commenced. "Home state" is defined by the act as the state in which the child "immediately preceding the time involved lived with

---

**4.** Under A.R.S. § 8-201(5), the term "award" means "to assign legal custody."

**5.** The Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, requires every state to give full faith and credit to child custody determinations made by another state consistent with the provisions of that section. Although the act sets forth jurisdictional criteria similar to those in the Uniform Child Custody Jurisdiction Act, these pertain only to the state whose decree is to be enforced (in this case, Arkansas) and not to the state where modification of custody is being sought. Accordingly, the federal act is not relevant to the initial determination of the existence of jurisdiction in Arizona. To the extent that the exercise of jurisdiction in Arizona resulted in a modification of Arkansas' prior custody determination, however, the federal act is obviously relevant.

his parents, a parent or a person acting as parent for at least six consecutive months,...." A.R.S. § 8–402(5). While the children had been in Arizona for more than six months prior to the hearing, the critical date for jurisdictional purposes is the date the proceedings were commenced. At that point Arkansas was clearly their "home state."

Nor do we think that the second paragraph provided jurisdiction on the basis of a significant connection between the children and the state of Arizona and the availability of substantial evidence concerning their present or future care. The children had been in Arizona only a short period, and the complaints relating to their care by the McGoughs all arose out of events transpiring solely in Arkansas. To permit evaluations performed in Arizona to suffice as "substantial evidence" for purposes of jurisdiction would effectively defeat the purpose of the act, which is in part to avoid jurisdictional conflict between states, to promote cooperation with the courts of other states, and to "[a]ssure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection...." A.R.S. § 8–401(A)(3).

It is further apparent that paragraph 4 cannot serve as a basis for jurisdiction, since Arkansas had continuing jurisdiction over the guardianship proceedings, and there is nothing in the record to indicate that its courts were ever contacted with regard to this matter, much less declined to exercise jurisdiction.

The only basis for jurisdiction, and the ground upon which the juvenile court appeared to rely, was the emergency jurisdiction provision of paragraph 3. The McGoughs argue that there was no "emergency" in Arizona within the meaning of this provision because (1) the alleged molester did not reside with the McGoughs and apparently was no longer in the vicinity of their home; (2) the Arkansas Department of Human Services had indicated its

willingness to investigate the allegations of abuse and take whatever steps were necessary to protect the children; and (3) the emergency contemplated by the statute must be an emergency within the refuge state. We disagree.

At the time the juvenile court was required to make its jurisdictional ruling, it was presented with substantial evidence in the form of reports by the evaluating psychologist and therapist that the children had been sexually molested. The court was advised that Mr. Bennett had been ordered by the Arkansas court to return the children to their guardians in Arkansas where the abuse had allegedly taken place. Further, this case differs in an important respect from *Dillon v. Medellin*, 409 So.2d 570 (La.1982), cited by the McGoughs, in that it is not simply a custody battle between private persons, but rather a dependency proceeding to which the state is a party in its capacity as *parens patriae*, a distinction noted by the *Dillon* court. Under the circumstances presented in this case, we hold that the juvenile court properly assumed jurisdiction under A.R.S. § 8–403(A)(3).

Having determined that it had jurisdiction to hear the matter, the juvenile court was then obligated to determine whether it should exercise that jurisdiction. *Iacouzze v. Iacouzze*, 137 Ariz. 605, 672 P.2d 949 (App.1983). The Uniform Act flatly prohibits the exercise of jurisdiction if at the time the petition is filed a custody proceeding is pending in another state, unless the latter proceeding is stayed by that court. A.R.S. § 8–406(A). Further, the court may decline to exercise jurisdiction if it finds that the court of another state is a more appropriate forum. A.R.S. § 8–407. The latter statute permits, and the former statute *requires*, the court to communicate with the court of the other state to assure that the litigation will be conducted in the more appropriate forum. A.R.S. §§ 8–406(B), (C), –407(D).

At this point, the provisions of the Parental Kidnapping Prevention Act become relevant, inasmuch as that statute

requires the juvenile court to enforce custody determinations made in another state and prohibits it from modifying the same unless:

"(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A(f).

The statute defines "custody determination" as "a judgment, decree, or other order of a court providing for the custody or visitation of a child . . . ," and clearly encompasses the decree of the Arkansas court appointing the McGoughs as guardians of the children. 28 U.S.C. § 1738A(b)(3). "Modification" is defined to "refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;" 28 U.S.C. § 1738A(b)(5). Although dependency proceedings are not expressly referenced in the statute, there is nothing to indicate that it was intended to be limited solely to custody disputes between parents. See *E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871 (1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983). In the absence of any language to restrict the scope of its applicability, and in light of the ongoing custody dispute between Bennett and the McGoughs which preceded and underlies the dependency action, the juvenile court's award of legal custody of the children to DES can only be construed as an "order . . . providing for the custody . . . of a child" which was "made subsequent to . . . a prior custody determination concerning the same child. . . ." Absent a showing of compliance with the provisions of subsection (f) quoted above, the order is contrary to the federal statute. Although the juvenile court had jurisdiction, there was no showing before the juvenile court nor anything in the record which would support a finding that the Arkansas court no longer

had jurisdiction or had declined to exercise jurisdiction. Indeed, it appears to the contrary that Arkansas retained continuing jurisdiction through the guardianship proceeding. No attempt was made either by the petitioners or the juvenile court to communicate with the Arkansas court to resolve the matter of the appropriate forum to litigate the issues presented by the dependency petition. In the absence of any finding that Arkansas no longer had jurisdiction, or had declined to exercise jurisdiction, the juvenile court's order was contrary to the provisions of 28 U.S.C. § 1738A.[6] None of the parties have addressed the effect of the federal act on the issues presented in this appeal.

With reference to the provisions of the Uniform Child Custody Jurisdiction Act, the McGoughs argue that under the emergency jurisdiction provision, the juvenile court had authority to enter only temporary protective orders and to direct the petitioners to seek permanent relief from the courts of Arkansas, citing this court's decision in *Iacouzze v. Iacouzze*, supra.

We reject out of hand Mr. Bennett's response that he cannot obtain relief in Arkansas because he has been held in contempt by the courts of that state. He has created his own practical dilemma by his failure to petition the Arkansas court in the first instance or, at a minimum, to apprise the latter of the basis for his concerns for the children's well-being and his consequent refusal to return them to the McGoughs.

■ DES argues that since it has no standing to file a dependency petition in Arkansas, a refusal by the juvenile court to exercise jurisdiction over its dependency petition would prevent it from fulfilling its statutory duty to protect dependent children within this state. Additionally, DES argues that the circumstances underlying a dependency proceeding are distinguishable from those in parental custody proceedings, and that the exercise of emergency

---

6. Our holding is limited to the court's order ruling on the merits of the situation. We do not construe the federal act to preclude the issuance

of the court's initial order making the children temporary wards of the court pending the outcome on the merits.

**534**

jurisdiction should not be limited to the issuance of temporary orders as in *Iacouzze,* supra. According to DES, the emergency basis for jurisdiction continues as long as the dependency exists.

We disagree. To adopt the construction of the Uniform Act urged by DES would have the effect as a practical matter of excluding all dependency proceedings from its purview, a result clearly not intended by the drafters, who expressly defined custody proceedings to include dependency proceedings. See A.R.S. § 8–402(3). Nor do we believe that DES' statutory duty to protect the children can only be fulfilled by conducting the dependency proceeding in Arizona. Given the affidavit of Norma Snow, quoted above, and in the absence of any evidence, much less substantial evidence, that the state of Arkansas would be unwilling or unable to exercise its own duty to protect its resident children, the juvenile court had no basis for ignoring the provisions of the Uniform Act and the Parental Kidnapping Prevention Act and exercising jurisdiction over the merits of the dependency proceedings. Once the court was apprised of the pendency of the guardianship proceeding, it was obligated to communicate with the Arkansas court, apprise the latter of the filing of the dependency petition in Arizona, and determine with that court which forum was the more appropriate in which to proceed.

Indeed, as we have noted above, absent a declination of jurisdiction by Arkansas, the juvenile court was precluded by 28 U.S.C. § 1738A from proceeding to the merits and modifying the determination of custody previously made by the courts of that state. Assuming that Arkansas refused to decline jurisdiction in favor of proceedings in Arizona, DES' obligations with respect to the children could be fully protected by appropriate temporary orders of the juvenile court, for example, retaining the children as temporary wards, directing DES to cooperate with its counterpart in Arkansas in the investigation of the case and its prosecution there, or directing Mr. Bennett either to initiate dependency proceedings in Arkansas or to seek termination of the pending guardianship. In the unlikely event that the state of Arkansas would fail to take appropriate action in response to the allegations of abuse, such inaction conceivably could be deemed as tantamount to a declination of jurisdiction. Since Arkansas has not been given the opportunity, the issue is not before us. The bottom line for purposes of this appeal is that Arkansas must first be given such an opportunity before the juvenile court is authorized to proceed further.

In sum, we hold that the juvenile court had jurisdiction of the dependency proceeding pursuant to the emergency jurisdiction provision of the Uniform Child Custody Jurisdiction Act. In proceeding to exercise that jurisdiction without first communicating with the courts of Arkansas to determine the appropriate forum and without the latter's having declined jurisdiction, the juvenile court acted in contravention of both the Uniform Act and the Parental Kidnapping Prevention Act. Because of our disposition of this appeal, we do not address the remaining issues raised by the appellant. The order of the juvenile court is vacated, and the matter is remanded for further proceedings consistent with this opinion.

HOWARD and HATHAWAY, JJ., concur.