In re Christopher Jacob ALDRIDGE, a minor.

Betty Ruth LEDOUX, Petitioner,

v.

Philip Edward ALDRIDGE and Laura Aldridge, Respondents.

No. 18103.

Missouri Court of Appeals, Southern District, Division One.

Nov. 30, 1992.

Sylvia K. Byrnes–Ales, Roberts, Fleischaker & Williams, Joplin, for petitioner.

John M. Garrity, Susanna Jones, Legal Aid of Western Missouri, Joplin, for respondents.

CROW, Presiding Judge.

In this original proceeding in habeas corpus, Petitioner, Betty Ruth Ledoux, seeks custody of her grandson, Christopher Jacob Aldridge ("Chris"), who resides with Respondents, Philip Edward Aldridge ("Philip") and Laura Jane Aldridge ("Laura"), in Jasper County, Missouri.

Pursuant to Rule 68.03, Missouri Rules of Civil Procedure (1992), we appointed The Honorable Dennis D. Reaves, Associate Circuit Judge of Cedar County, as Master. With commendable dispatch and diligence, he conducted an evidentiary hearing and thereafter furnished us a comprehensive and scholarly report. His findings form the basis of the following narrative.

Chris, born February 5, 1982, is the son of Petitioner's daughter, Sandra Dawn Barker ("Sandra"), and one Fred Gilchrist. Their parental rights were either suspended or terminated by the Superior Court of the State of Arizona, County of Maricopa ("the Arizona court"), on May 14, 1985.[1] At that time, Chris was residing with Petitioner in Arizona. The Arizona court approved Petitioner as "temporary custodian" of Chris.

Philip is Petitioner's son, Sandra's brother, and Chris' uncle. Laura is Philip's wife.

Sometime after the 1985 court action, Petitioner's health deteriorated. Consequently, she turned Chris over to Philip and Laura, then Arizona residents. Thereafter, on October 29, 1987, with Petitioner's consent, the Arizona court appointed Philip guardian of Chris.

In 1988, Philip and Laura moved to Jasper County, Missouri, bringing Chris with them. Petitioner, who remained in Arizona, was aware of the move and did not protest. Chris has not been in Arizona since moving to Missouri.

On December 5, 1990, Petitioner filed an application in the Arizona court for an order (a) setting an expedited hearing to determine whether Philip's guardianship of Chris should be revoked, and (b) granting her temporary physical custody of Chris.

The Arizona court issued an order directing Philip to show cause at a hearing January 7, 1991, why his guardianship of Chris should not be terminated. Petitioner appeared in the Arizona court on the appointed date and testified. She was the only witness.

On January 15, 1991, the Arizona court entered an order stating, in pertinent part:

. . . .

5. That this Court has continuing jurisdiction to appoint a guardian in this matter.

6. That Christopher ... continues to be a ward of the State of Arizona.

7. That this Court determines that Arizona is the home state of Christopher ...;

8. That Philip Aldridge was personally served a copy of the petitioner's [application of December 5, 1990].

9. That the Court set a hearing ... on January 7, 1991 at 9:00 a.m.;

10. That the Court allowed Philip Aldridge to appear telephonically if desired to represent his interest in the scheduled proceedings;

11. That Philip Aldridge, did not appear in these proceedings despite that [sic] fact that notice and opportunity to be heard was provided;

12. That evidence was presented that Philip Aldridge has caused physical and emotional abuse on Christopher ... and that Philip Aldridge is an otherwise unacceptable person to care for Christopher . . . .

WHEREFORE, IT IS HEREBY ORDERED AND DECREED, that the October 27 [sic], 1987 guardianship order ... naming Philip Aldridge guardian of Christopher ... is hereby terminated. Hence forth [sic], Philip Aldridge's guardianship ... of Christopher ... is terminated.

IT IS FURTHER ORDERED that petitioner ... is appointed temporary guardian of Christopher ... until such time as this Court can rule upon her petition for

---

1. The record contains an order of the Arizona court filed January 15, 1991, stating parental rights were *terminated* May 14, 1985. The record contains another order of the same court filed September 5, 1991, stating parental rights were *suspended* May 14, 1985.

appointment as guardian of Christopher....

IT IS FURTHER ORDERED that Philip Aldridge place Christopher ... in the care and custody of [Petitioner] ... without delay.

In regard to the January 7, 1991, court proceeding, our Master found (from ample evidence) that Philip made an unsuccessful attempt "to contact the court at the hearing by telephone."

Petitioner immediately came to Missouri and filed a petition for writ of habeas corpus in the Circuit Court of Jasper County, seeking custody of Chris per the January 15, 1991, order of the Arizona court. The Circuit Court heard evidence and thereafter, on January 29, 1991, entered judgment denying Petitioner's prayer for custody. Petitioner returned to Arizona without Chris.

On July 25, 1991, the Arizona court heard further evidence regarding guardianship of Chris. This time, Philip mailed sundry documents to the Arizona court and participated in the hearing by telephone.

By an order filed September 5, 1991, the Arizona court appointed Petitioner guardian of Chris and commanded physical custody of Chris be immediately given to Petitioner. The order stated, among other things:

1. That this Court has jurisdiction to hear this petition under A.R.S. § 8–403(A);

. . . .

14. That ... a copy of the Petition was properly served upon Philip Aldridge in ... Missouri and that Philip Aldridge has had notice and an opportunity to be heard within the meaning of A.R.S. § 8–404;

. . . .

21. That this guardianship order shall be given binding force and *res judicata* effect as to all parties who have appeared herein pursuant to A.R.S. § 8–412.

Petitioner commenced the instant proceeding in this Court on April 20, 1992, basing her claim on the orders of the Arizona court filed January 15, 1991, and September 5, 1991. Much of the evidence heard by our Master concerned the alleged physical and emotional abuse referred to in paragraph 12 of the January 15, 1991, order (quoted *supra*). On that subject, our Master found:

The Division of Family Services [("DFS")] in Missouri has investigated the allegations of abuse and neglect alleged by [Petitioner] and has not substantiated those allegations.... [Chris] has been a client of [DFS] which has provided assistance in dealing with [his] behavioral problems as a hyperactive child.... This assistance was provided at the request of Philip and Laura Aldridge.... [Chris] has not been the subject of any protective services through [DFS] because of any suspected abuse or neglect....

No party filed exceptions to the Master's report. Our examination of the record confirms the above finding enjoys substantial evidentiary support.

Among the Master's conclusions are these:

Unquestionably the ... Arizona [court] had jurisdiction when it appointed Philip Aldridge guardian of Christopher Aldridge. Christopher was a ward of the State of Arizona and all interested persons were residents of that state.

The issue before this court is whether Arizona has continuing jurisdiction to modify its prior order to change custody of Christopher Aldridge.

Petitioner maintains she is entitled to custody of Chris for two reasons, the first of which is, in her words:

This Court should grant the relief requested in Petitioner's petition for writ of habeas corpus (i.e., recognition and enforcement of an Arizona state court order granting her custody of a minor child) because there is no evidence that the Arizona court assumed jurisdiction under statutory provisions not substantially in accordance with [§§ 452.440–.550, RSMo 1986], and therefore, Missouri law and the U.S. Constitution require that the Arizona state court decree be recognized and enforced.

We infer the phrase "the Arizona state court decree" in the above passage is meant by Petitioner to comprise the orders of January 15, 1991, and September 5, 1991. The constitutional provision to which she refers is Article IV, § 1 of the Constitution of the United States. It reads:

Full Faith and Credit shall be given in each State to the ... judicial Proceedings of every other State....

■ This provision requires Missouri to give a judgment of a sister state full faith and credit unless there was (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the concoction or procurement of the judgment. *In re Veach*, 365 Mo. 776, 287 S.W.2d 753, 758–59[8] (banc 1956); *Waterloo Lumber Company, Inc. v. Gardner*, 806 S.W.2d 513, 515 (Mo.App.1991); *Schumacher Elevator Co., Inc. v. Springfield Elevator Co., Inc.*, 804 S.W.2d 42, 45 (Mo.App.1991). A judgment of a court of a sister state, regular on its face, is entitled to a strong presumption that the court had jurisdiction over the parties and subject matter. *Johnson v. Johnson*, 770 S.W.2d 483, 485[2] (Mo.App.1989); *State of Minnesota, Marshall County v. Bybee*, 744 S.W.2d 511, 513[2] (Mo.App.1988); *Kilgore v. Kilgore*, 666 S.W.2d 923, 932[10] (Mo. App.1984). The burden of overcoming this presumption is on the party challenging the validity of the judgment. *Johnson*, 770 S.W.2d at 485[2]; *State of Minnesota, Marshall County*, 744 S.W.2d at 513[3]; *Kilgore*, 666 S.W.2d at 932[10]; *In Interest of K.P.B.*, 625 S.W.2d 692, 694[3] (Mo.App. 1981).

■ Lack of jurisdiction may be shown by evidence dehors the record, notwithstanding jurisdictional recitals of the foreign judgment. *Leichty v. Kansas City Bridge Co.*, 354 Mo. 629, 190 S.W.2d 201, 203[1, 2] (banc 1945), *cert. denied*, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946); *Turner v. Turner*, 637 S.W.2d 764, 769[9] (Mo.App.1982); *Hill v. Hill*, 241 Mo.App. 243, 236 S.W.2d 394, 399[4] (1951).

■ As we have seen, paragraph 7 of the January 15, 1991, order of the Arizona court recites Arizona is Chris' home state. Paragraph 1 of the September 5, 1991, order of the Arizona court recites such court has jurisdiction to hear Petitioner's application to be appointed Chris' guardian under A.R.S. § 8–403(A).[2] That section reads:

The superior court of the state of Arizona is vested with jurisdiction to make a child custody determination by initial or modification decree if any of the following apply:

1. This state is the domicile or the home state of the child at the time of commencement of the proceeding or had been the child's domicile or home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

2. It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.

3. The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

4. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of

---

**2.** We assume the Arizona court is referring to Arizona Revised Statutes, Annotated (West 1989). Section 8–403 is part of Arizona's version of the Uniform Child Custody Jurisdiction Act ("Arizona UCCJA"), which comprises §§ 8–

401 to 8–424, inclusive. Our Master took judicial notice of the Arizona UCCJA, as do we. § 490.080, RSMo 1986; *Howard Nat. Bank & Trust Co. v. Jones*, 243 S.W.2d 305, 306–07[4] (Mo. banc 1951).

the child that this court assume jurisdiction.

Obviously, the above statute confers jurisdiction on the Arizona court to make a child custody determination affecting Chris if any one of the situations spelled out in the statute exists. We consider them seriatim.

Under subsection 1 of § 8–403(A), the Arizona court had jurisdiction if Arizona was the domicile or home state of Chris at the time Petitioner commenced the proceeding to have Philip removed as Chris' guardian and have herself appointed guardian in his stead. Alternatively, jurisdiction lay in the Arizona court under subsection 1 if Arizona had been Chris' domicile or home state within six months before Petitioner commenced her proceeding and Chris were absent from Arizona because of his removal or retention by a person claiming custody, and a parent or person acting as parent continued to live in Arizona.

To discover the meaning of the term "home state" under Arizona law, we look to A.R.S. § 8–402.5, which reads:

> "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent for at least six consecutive months. . . .

The uncontradicted evidence before the Master was that Chris had lived in Missouri with his guardian, Philip, and the latter's wife, Laura, more than two years immediately preceding the date Petitioner commenced her proceeding in the Arizona court to have Philip removed as guardian and replaced by her. In her testimony, Petitioner admitted neither Chris nor Philip had been in Arizona during that two-year period, and she had not been to Missouri to see them.

It is thus evident Arizona was not Chris' home state when Petitioner commenced her Arizona proceeding, and Arizona had not been Chris' home state within six months before she commenced it. We therefore hold the Arizona court did not have jurisdiction under the "home state" ground in subsection 1 of A.R.S. § 8–403(A) to make a child custody determination affecting Chris when that court entered its orders of January 15, 1991, and September 5, 1991.

In reaching this conclusion, we are mindful the 1987 order of the Arizona court appointing Philip guardian of Chris provided Philip was to notify the Arizona court "upon any change of address." In his testimony before the Master, Philip admitted he failed to notify the Arizona court when he, Laura and Chris moved to Missouri. The Arizona court so found in its order of September 5, 1991, and our Master found likewise.

However, the Arizona court, as we read its orders of January 15, 1991, and September 5, 1991, did not rule Philip's guardianship of Chris was automatically nullified by the move to Missouri or by Philip's failure to notify the Arizona court of it. We therefore hold that when Petitioner commenced her proceeding in the Arizona court to oust Philip as guardian and to be named his successor, Chris was in the lawful custody of his guardian, Philip, and Missouri was Chris' home state.

Before leaving subsection 1 of A.R.S. § 8–403(A), we note that as an alternative to "home state" jurisdiction, the subsection refers to the "domicile" of the child. While the Arizona UCCJA does not define domicile, an explanation of the term is found in a decision of the Supreme Court of Arizona, *In re Webb's Adoption*, 65 Ariz. 176, 177 P.2d 222, 224[4] (1947):

> An infant is not sui juris and therefore cannot fix or change his domicile. His residence is that of his parents or the one of them who has the legal custody of him, or if neither parent has the legal custody, the one who stands in the relation of loco parentis to him.

*Accord: Garay Uppen v. Superior Court of Pima County*, 116 Ariz. 81, 567 P.2d 1210, 1211–12[2] (App.1977).

Here, Philip, by virtue of his guardianship of Chris, stood in loco parentis to Chris during the two years following the 1988 move to Missouri. Applying Arizona case law on domicile, we hold that at the time Petitioner commenced her proceeding in the Arizona court to supplant Philip as Chris' guardian, Chris' domicile had be-

come Missouri, the domicile of his guardian, Philip. Consequently, the Arizona court did not have jurisdiction under the "domicile" ground in subsection 1 of A.R.S. § 8–403(A) to make a child custody determination affecting Chris when that court entered its orders of January 15, 1991, and September 5, 1991.

■ This brings us to subsection 2 of A.R.S. § 8–403(A). Pertinent to it, the September 5, 1991, order of the Arizona court contains these findings: Chris became a ward of the State of Arizona by virtue of the order of May 14, 1985 [3]; Chris lived with Petitioner from February 5, 1985, through October 1, 1987; Petitioner resides in Phoenix, Arizona, in a home with four siblings of Chris [4]; Petitioner has formally adopted two of the siblings and currently houses the other two pending future adoption; Petitioner is a proper party of good, sound moral character; Petitioner and her husband are employed and have the means to support Chris; the best interests of Chris would be served if he were raised in a home with his grandparents,[5] brothers and sisters.

Petitioner maintains these findings demonstrate the Arizona court had jurisdiction under subsection 2 of A.R.S. § 8–403(A) in that Chris and at least one contestant—herself—have a significant connection with Arizona and there is available in Arizona substantial evidence concerning Chris' present or future care, protection, training and personal relationships.

We agree Petitioner has a significant connection with Arizona, but we see no significant connection between Chris and Arizona. True, he became a ward of Arizona in 1985, and the 1987 order appointing Philip guardian was issued by the Arizona court. However, there is no evidence of any significant connection between Chris and Arizona after that. Nothing in the record indicates any Arizona social service agency was ever assigned any duties or responsibilities regarding him, or that any

reports about him were required of Philip by the Arizona court. Indeed, Petitioner testified she agreed to let Philip become guardian to enable Chris to remain in the family and not be lost to "the system."

The Master found Arizona provided no services for Chris after the 1988 move to Missouri, and the Arizona court did not contact Philip until the order to show cause was served in December, 1990. Those findings are supported by the record, and no party disputes them.

An Arizona case with similarities to the instant case is *Matter of Pima County Juvenile Action*, 147 Ariz. 527, 711 P.2d 1200 (App.1985). There, two orphaned children resided with their guardians in Arkansas. The children went to Arizona to visit their maternal grandfather and his wife. Upon arrival, the children were observed to be dirty and bruised. The grandfather filed a petition in an Arizona court alleging the children had been subjected to sexual abuse and severe disciplinary measures by their guardians. The petition was accompanied by reports of a psychologist and therapist who had evaluated the children in Arizona. Those reports supported the allegations of mistreatment. The Arizona court adjudicated the children dependent, granted legal care and custody to an Arizona agency, and awarded physical custody to the grandfather and his wife.

On appeal by the Arkansas guardians, the Court of Appeals of Arizona held jurisdiction to make a custody determination regarding the children was governed by the Arizona UCCJA. Consequently, the appellate court had to decide whether the lower court had jurisdiction under any of the instances set forth in A.R.S. § 8–403(A), quoted earlier in this opinion.

The appellate court held jurisdiction did not lie under subsection 1 in that Arizona was not the children's domicile or home state at the time the Arizona proceedings

---

3. Footnote 1, *supra.*

4. A "Pretrial Statement" prepared for the Arizona court by Petitioner's Arizona lawyer before the July 25, 1991, hearing states these four siblings are "half brothers and sisters" of Chris.

5. Petitioner's husband is not Chris' grandfather. Petitioner's former husband, Oren Aldridge, is Chris' maternal grandfather. We infer from the testimony that he lives in Missouri.

were commenced. 711 P.2d at 1204–05[4]. The opinion explained:

> [T]he critical date for jurisdictional purposes is the date the proceedings were commenced. At that point Arkansas was clearly their "home state."

711 P.2d at 1205.

The appellate court held subsection 2 of A.R.S. § 8–403(A) likewise provided no basis for jurisdiction in that there was no significant connection between the children and Arizona. 711 P.2d at 1205[5]. The children had been in Arizona only a short period, and the complaints relating to their care by their guardians all arose out of events transpiring solely in Arkansas. *Id.* The appellate court held that to permit evaluations performed in Arizona to suffice as "substantial evidence" for purposes of jurisdiction would effectively defeat the purpose of the UCCJA, which is in part to avoid jurisdictional conflict between states, to promote cooperation with the courts of other states, and to assure that litigation concerning custody of a child will take place ordinarily in the state with which the child and his family have the closest connection. *Id.*

The appellate court went on to consider whether the lower court had jurisdiction under subsections 3 or 4 of A.R.S. § 8–403(A). We need not summarize that segment of the opinion because, as we understand Petitioner's brief, she does not claim the Arizona court had jurisdiction under either of those subsections.[6]

Here, Petitioner admitted at the Master's hearing that her testimony in the Arizona court regarding the alleged mistreatment of Chris was based on what she had been told by telephone by her ex-husband, Oren Aldridge,[7] and by JoAnn Carnagey, a Jasper County, Missouri, DFS caseworker.

Both Mr. Aldridge and Ms. Carnagey testified at the Master's hearing. Mr. Aldridge recounted he once observed an incident that "looked like child abuse," and told Petitioner about it by phone. However, he avowed he later changed his opinion

about it and rejected a request by Petitioner "to sign some kind of a paper against [Philip]." Mr. Aldridge added, "I seen [Chris] when he first came here and he's three times better now than he was when he come from [Arizona]."

Ms. Carnagey testified Philip and Laura asked DFS for help regarding Chris' behavior—they "wanted to participate in counseling and they needed help with that." According to Ms. Carnagey, DFS never substantiated any abuse of Chris by Philip or Laura. Ms. Carnagey swore she never told Petitioner that DFS had substantiated any abuse.

Chris testified at the Master's hearing, as did Laura, Philip, and Debra Ann Elias, a friend of theirs who lives in Carthage, Missouri. All four testified about Chris' treatment by Philip and Laura.

It is thus manifest that all firsthand sources of evidence on the issue of the alleged mistreatment are in Missouri, not Arizona. In that respect, this case is like *Matter of Pima County Juvenile Action,* 711 P.2d 1200, where all evidence regarding the alleged mistreatment of the children by their guardians was in Arkansas, not Arizona. There, the Arizona appellate court held Arizona lacked jurisdiction under subsection 2 of A.R.S. § 8–403(A) to make a child custody determination regarding the children even though they were then in Arizona, as were the psychologist and therapist who had evaluated them.

Here, Chris was not in Arizona when Petitioner commenced her proceeding there, nor had he been there for more than two years beforehand. Furthermore, there was no evidence in Arizona on the mistreatment issue or Chris' current care, protection, training or personal relationships. All such evidence was in Missouri.

Given these circumstances, we are convinced by *Matter of Pima County Juvenile Action* that the Arizona appellate courts would hold Arizona lacked jurisdiction under subsection 2 of A.R.S. § 8–

---

**6.** The Supreme Court of Arizona subsequently approved the decision of the Court of Appeals in part and vacated it in part. 147 Ariz. 584, 712 P.2d 431 (banc 1986). The portion of the decision of the Court of Appeals discussed in our opinion was approved by the high court.

**7.** Footnote 5, *supra.*

403(A) to make a child custody determination regarding Chris when Petitioner commenced her proceeding in the Arizona court in December, 1990. We therefore reject Petitioner's contention that jurisdiction lay in the Arizona court under that subsection.

As observed earlier, we do not understand Petitioner to claim the Arizona court had jurisdiction to make a child custody determination regarding Chris under either subsections 3 or 4 of A.R.S. § 8–403(A). On the facts here, it is obvious neither subsection applied when Petitioner commenced her proceeding in the Arizona court in December, 1990.

We therefore hold the Arizona court lacked jurisdiction under the Arizona UCCJA to make a child custody determination affecting Chris when that court entered its orders of January 15, 1991, and September 5, 1991. That being so, § 452.-500, RSMo 1986,[8] does not require us to recognize and enforce the provisions of those orders awarding Petitioner custody of Chris. *Bell v. Bell,* 682 S.W.2d 892, 895[3] (Mo.App.1984). Petitioner's theory that the Missouri UCCJA compels us to do so is without merit.

Petitioner's second basis for claiming she is entitled to custody of Chris is, in her words:

This Court should grant the relief requested in Petitioner's petition for writ of habeas corpus because the Federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, requires that the appropriate authorities of this State enforce a custody determination made by a court of the State of Arizona, so long as that court complied with the provisions of § 1738A, and there is no evidence that the state court of Arizona failed to so comply.

Insofar as pertinent here, the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A (1988), reads:

(a) The appropriate authorities of every State shall enforce according to its terms ... any child custody determination made consistently with the provisions of this section by a court of another State.

(b) ....

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) ....

Petitioner maintains the Arizona court had jurisdiction under the Arizona UCCJA to make the custody determination affecting Chris in its orders of January 15, 1991, and September 5, 1991. Consequently, says Petitioner, we are required by the PKPA to enforce that custody determination.

■ Applying Arizona case law, we earlier rejected Petitioner's theory that the Arizona court had jurisdiction under the Arizona UCCJA to make a child custody determination affecting Chris when Petitioner commenced her proceeding in that court in December, 1990. Under 28 U.S.C. § 1738A(c)(1), a child custody determination is consistent with the PKPA only if the court making the determination has jurisdiction under its own state law. It follows that the PKPA does not require us to honor the provisions of the orders of the Arizona court of January 15, 1991, and September 5, 1991, awarding Petitioner custody of Chris. 28 U.S.C. § 1738A(a).

■ Alternatively, Petitioner argues Arizona had "continuing jurisdiction" over Chris under A.R.S. § 14–5208, which reads:

---

**8.** Section 452.500, RSMo 1986, is part of Missouri's version of the Uniform Child Custody Jurisdiction Act ("Missouri UCCJA"), which comprises §§ 452.440–.550, inclusive. Section 452.500 reads:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with sections 452.440 to 452.550, or which was made under factual circumstances meeting the jurisdictional standards of sections 452.440 to 452.550, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of sections 452.440 to 452.550.

By accepting a ... court appointment as guardian a guardian submits personally to the jurisdiction of the court in any proceeding relating to the guardianship that may be instituted by any interested person....

Petitioner reasons the Arizona court, by appointing Philip guardian of Chris in 1987, retained jurisdiction to make a child custody determination affecting Chris at the time she commenced her proceeding in that court in December, 1990.

We disagree. While § 14–5208 makes the *guardian* personally amenable to the jurisdiction of the Arizona court that appoints him (in any proceeding relating to the guardianship), the statute says nothing about personal jurisdiction over the *ward.* We assume, without deciding, that the Arizona court retained jurisdiction to terminate Philip as Chris' guardian regardless of where Philip or Chris were residing when the Arizona court made that decision.

However, the Arizona court, in its orders of January 15, 1991, and September 5, 1991, did more than terminate Philip as Chris' guardian. The Arizona court made a child custody determination [9] affecting Chris by ordering custody transferred from Philip to Petitioner. We find nothing in A.R.S. § 14–5208 authorizing an Arizona court to make a child custody determination when such court lacks jurisdiction to do so under the Arizona UCCJA. The rationale of *Matter of Pima County Juvenile Action,* 711 P.2d at 1205, convinces us the Arizona appellate courts would agree § 14–5208 does not provide a jurisdictional basis for child custody determinations independent of the Arizona UCCJA.

Accordingly, we hold none of the reasons advanced by Petitioner support her contention that Missouri must honor the child custody determination in the orders of the Arizona court of January 15, 1991, and September 5, 1991.

An alert reader will recognize that if (a) Philip's guardianship of Chris was terminated by the January 15, 1991, order of the Arizona court, and (b) Missouri does not honor the commands of that court transferring custody of Chris from Philip to Petitioner, there is no court order valid in Missouri fixing Chris' custody.[10] In such circumstances, what is the correct disposition of this habeas corpus action?

In all legal proceedings involving custody of a child, the prime consideration and ultimately determinative factor is the welfare and best interest of the child. *In re Shepler,* 372 S.W.2d 87, 90[2] (Mo. banc 1963). There, custody of two children was awarded to their mother when she was divorced from the father. Later, the mother drowned, whereupon the children began living with their maternal grandparents. The father sought custody by habeas corpus. The Supreme Court of Missouri held:

[W]henever a minor child is brought within the jurisdiction of a court for an adjudication with respect to the question of its custody, the child becomes the ward of the court; and in determining the question of its ultimate disposition, the child's well-being is of paramount consideration, and the rights and claims of the contending parties, even in the case of the parents themselves, must be subordinated to what the court may conclude will be for the best interest of the child. In such an instance the nature of the inquiry makes the proceeding one of an equitable nature; and the question of either party's strictly legal right will be measured in terms of the welfare of the child.

372 S.W.2d at 90–91 (citation omitted).

Chris, ten years and five months of age at the time of the Master's hearing, testified he likes living with Philip and Laura, and wants to stay with them. He completed the third grade during the 1991–92 school year. His report card showed "As and Bs," and confirmed he would start the fourth grade when the ensuing school year began. He was absent from school only two days in the third grade.

---

9. A.R.S. § 8–402.2 reads, in pertinent part: "Custody determination" means a court decision and court orders and instructions providing for the custody of a child....

10. Neither Philip nor Laura has petitioned a Missouri court to be appointed Chris' guardian.

Oren Aldridge, Chris' maternal grandfather, testified Chris is happy living with Philip and Laura. As reported earlier, the Master found DFS' involvement with Chris was by request of Philip and Laura, and there was no substantiated abuse or neglect.

Chris has now lived with Philip and Laura five years. As recognized in *D.G.N. v. S.M.*, 691 S.W.2d 909, 914 (Mo. banc 1985), every day a child in its formative years is left in a stable parent-child relationship, natural or foster, the greater the potential for harm to the emotional well being of the child should it be necessary to order a change of custody.

On the evidence here we hold that at present, Chris' best interest is served by leaving him where he is. Our holding does not foreclose future custody proceedings in a forum vested with jurisdiction to make a child custody determination affecting Chris.

Christopher Jacob Aldridge is remanded to the custody of Respondent, Philip Edward Aldridge.

PARRISH, C.J., and SHRUM, J., concur.