18 Kan. App. 2d 627 (1993)
857 P.2d 1375
In the Interest of L.C., a Child in Need of Care.
No. 68,425
Court of Appeals of Kansas.
Opinion filed August 6, 1993.
Terence A. Lober, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, for appellant natural father.
Michael Waite, of Leavenworth, for appellant natural mother.
Frank E. Kohl, county attorney, for appellee.
William E. Pray, of Leavenworth, guardian ad litem.
Before BRISCOE, C.J., LEWIS and PIERRON, JJ.
PIERRON, J.:
This case arises from the trial court's decision to terminate the parental rights of Charlene C. and Kevin C. to L.C. Appellants allege four points of error: lack of jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA); insufficient evidence of unfitness; erroneous admission of hearsay evidence; and abuse of discretion in refusing to grant a continuance.
We reverse and remand.
*628 The minor child, L.C., was placed in the custody of the Secretary of Social and Rehabilitation Services (SRS) in May 1991. SRS suspected L.C. was the victim of sexual abuse. L.C. was adjudicated a child in need of care in July 1991. Physical custody of L.C. was returned to the mother, Charlene C., in July 1991 after L.C.'s father, Kevin C., agreed to leave the home.
A physical examination of the child revealed penetration trauma. No source or instrument was identified as the cause of the trauma. Evidence showed the parents were in a state of denial regarding the diagnosis of sexual abuse. Social workers who had met with Charlene and Kevin also testified that, in their opinion, L.C. was being forced to present a picture of a perfect family and was being pressured to deny the abuse. The social workers also testified the parents were, in their opinion, uncooperative and slow to respond to requests for releases and completion of testimony.
Charlene and Kevin were stationed in Leavenworth as part of Kevin's military service. They had no family in Kansas. The majority of the relatives on both sides of the family reside in Pennsylvania. Charlene and Kevin had formerly lived in Pennsylvania. The record shows that in February 1992 Charlene went to Pennsylvania, taking L.C. with her. It is undisputed she did not have the court's permission to remove the child from the jurisdiction. Charlene returned to Pennsylvania so her family could support her during the final weeks of a difficult pregnancy. When Charlene arrived in Pennsylvania, she placed L.C. with her aunt, Joy. L.C.'s older sister was already living with the aunt. The Kansas motion to terminate parental rights was filed after Charlene removed L.C. from the court's jurisdiction. The motion to terminate alleges conduct that is emotionally or sexually cruel or abusive.
Charlene hired an attorney in Pennsylvania who instituted proceedings in Pennsylvania. Specifically, the attorney had the child placed in the custody of the Delaware County, Pennsylvania, Children and Youth Services with residential placement in the home of the child's aunt and uncle. A pick-up order issued by the Kansas court was stayed, and the child remained in Pennsylvania throughout the rest of the proceedings. As stated above, the Kansas trial court proceeded and severed parental rights.
*629 It should be noted that parental rights were terminated only as to one child. Charlene and Kevin are the parents of three children.
The primary argument to be resolved by this court is whether the UCCJA, K.S.A. 38-1301 et seq., applies to a case involving termination of parental rights. If the answer is yes, this court must then determine whether the trial court complied with the jurisdictional requirements of the Act.
Kansas statutes and case law are clear that the UCCJA applies to proceedings held pursuant to the Kansas Code for the Care of Children, K.S.A. 38-1501 et seq. K.S.A. 1992 Supp. 38-1503(b) states: "Subject to the uniform child custody jurisdiction act, K.S.A. 38-1301 et seq., the district court shall have original jurisdiction to receive and determine proceedings under this code." This court discussed the application of this statute in In re Wicks, 10 Kan. App.2d 124, 693 P.2d 481 (1985).
The facts of Wicks are instructive for the instant case. When Glenda and Roland Wicks were divorced, Glenda was awarded custody of their two-year-old child, Carrie. Three years later, the State of Kansas adjudicated Carrie a deprived child (now termed a child in need of care), made her a ward of the court, and transferred custody to Roland. Roland, a member of the armed services, was stationed in Texas at the time. He argued Kansas was an inconvenient forum and requested the proceedings be transferred to Texas. The Kansas court concurred and the proceedings were transferred to Texas. Wicks, 10 Kan. App.2d at 125. In affirming the trial court, this court stated, "[A]voiding interstate jurisdictional conflicts and promoting the child's best interests are among the stated purposes of the UCCJA [citation omitted]. The UCCJA provides a uniform jurisdictional analysis for all proceedings pertaining to child custody." Wicks, 10 Kan. App.2d at 125-26.
The guardian ad litem in the instant case argues the termination proceeding is not a custody case. He argues custody had already been placed with SRS. However, that placement was temporary. The legal effect of the termination procedure was to determine whether L.C.'s parents would ever regain legal custody of their child. Thus, in substance, if not name, the termination was a permanent custody hearing as far as the parents were concerned. *630 The UCCJA applies to actions to determine who will have custody. It is logical to apply the UCCJA when determining who will not have custody.
Research has not revealed any case precedent in Kansas where the UCCJA has been applied when a termination proceeding is pending against both parents simultaneously. Research does show that at least one other state has used the UCCJA to determine jurisdiction in a case somewhat factually similar to the one under consideration. See State In Interest of W.D. v. Drake, 770 P.2d 1011 (Utah App.), cert. denied 789 P.2d 33 (Utah 1989).
In K.S.A. 38-1303, the UCCJA sets out four scenarios in which a court may exercise jurisdiction:
"(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (A) is the home state of the child .. . or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships, or
(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise a child in need of care."
Based on the statute, Kansas had jurisdiction under K.S.A. 38-1303(a)(1) as the home state of the child because legal custody was still with the Kansas Department of Social and Rehabilitation Services. Pennsylvania had jurisdiction under the same provision because of Pennsylvania court action and under K.S.A. 38-1303(a)(2) because the child and parent had significant connections with the state. Arguably, Pennsylvania also had jurisdiction under 38-1303(a)(3)  emergency jurisdiction because the child was considered a child in need of care.
Pennsylvania could have declined jurisdiction when it became aware of the case pending in Kansas or when it became aware of Charlene's flight from the Kansas court. Pennsylvania did not *631 do that. Once jurisdictional conflict became evident, the Kansas court should have considered the inconvenient forum procedure of K.S.A. 38-1307 on its own motion or at the request of counsel.
K.S.A. 38-1307 states:
"(a) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
....
(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) if another state is or recently was the child's home state;
(2) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;
(3) if substantial evidence concerning the child's present or future case, protection, training, and personal relationships is more readily available in another state;
(4) if the parties have agreed on another forum which is no less appropriate; and
(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in K.S.A. 38-1301."
In the instant case, the Kansas trial court focused on the mother's flight from the state. It is clear the court was rightly miffed. However, once the child was absent from the state, the court was required to consider the best interests of the child in determining jurisdiction. K.S.A. 38-1301. By refusing to consider the provisions of the UCCJA, the court possibly punished the child for the sins of the mother.
Counsel inquired whether the Kansas and Pennsylvania courts had discussed jurisdiction. The court implied there had not been any communication. At our oral argument, it was confirmed that there had been no contact.
The Kansas court's failure to communicate with the Pennsylvania court was in direct contravention of the Kansas statutes. K.S.A. 38-1306(c) states:
"If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."
*632 Similarly, K.S.A. 38-1307(d) encourages this type of communication:
"Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties."
While the Kansas court expressed displeasure with the Pennsylvania court's actions, it is clear the Pennsylvania court and social service agencies were quite possibly acting appropriately to safeguard the interests of L.C. Legal custody of L.C. had been placed with the Pennsylvania equivalent of the Kansas SRS. L.C. was residing with her aunt and uncle in a safe, loving atmosphere. She had been reunited with her sister and was attending school. She had received a medical examination and was receiving psychological counseling.
A consideration of the UCCJA in 1992 might have favored Kansas jurisdiction. Even then, however, Pennsylvania met many of the criteria listed as considerations in the inconvenient forum provision of the UCCJA. Pennsylvania had a closer connection to L.C. and her family. The majority of the evidence regarding future protection, training, and personal relationships was in Pennsylvania. The natural parents considered Pennsylvania their home state.
The child has been in Pennsylvania for more than 15 months. Consequently, her family and treatment relationships are even more firmly established. The security needs the State of Kansas felt were lacking in L.C.'s life have been met. Undoubtedly, reports and information regarding L.C. have been generated. The Kansas action was pending for a total of 11 months before termination proceedings began. It seems evident that, at this point in time, Pennsylvania's connections to the case are even greater than they were last year. Pennsylvania also now meets all the jurisdictional tests set out in K.S.A. 38-1303(a).
The trial court's frustration with the mother was justified. However, no effort was made to pursue other means of dealing with her conduct. The State was not powerless. It could have filed criminal charges against her if necessary and appropriate. See *633 K.S.A. 21-3422 and K.S.A. 21-3422a, dealing with unlawful interference with parental custody.
The child welfare purposes for which Kansas enacted the UCCJA are set out in K.S.A. 38-1301. The eight purposes which apply to individual cases are to:
"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
"(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
"(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state;
"(4) discourage continuing controversies over child custody in the interest of greater stabilty of home environment and of secure family relationships for the child;
"(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;
"(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;
"(7) facilitate the enforcement of custody decrees of other states;
"(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child...."
Arguably, all eight could be applied to this case. We conclude that the UCCJA as enacted in Kansas, is applicable to cases involving termination of parental rights.
Although K.S.A. 38-1307(d) states that the Kansas court "may communicate with a court of another jurisdiction" to achieve the purposes of the Act, it is obvious that the procedures are more than mere suggestions. When there are conflicting court orders regarding child custody, it is difficult to construct a reasonable scenario where a refusal to follow the Act would not be an abuse of discretion. The Act is provided to aid in the resolution of these matters, and a reasonable judge will not ignore its provisions.
At oral argument, counsel for the appellee contended that the Kansas court was not required to contact the Pennsylvania court because the Pennsylvania court was infringing upon the Kansas *634 court's proper jurisdiction. Appellee further argued that Pennsylvania's court was, therefore, required to make the first move. Suffice it to say, support for such a required protocol could not be referenced by counsel in the Act or in any reported case in this or any other state.
Under the facts of this case, the order terminating parental rights must be reversed and the case remanded for failure to comply with the UCCJA. Although an unresolvable conflict between the courts of different states is a theoretical possibility, we are confident that a good faith compliance with the Act will almost always achieve the end which was the purpose of its enactment.
Experience shows that state appellate courts will safeguard the appropriate jurisdictional ruling of trial courts of sister states even if it requires the reversal of their own trial courts. See, e.g., Johnson v. Melback, 5 Kan. App.2d 69, 612 P.2d 188 (1980); Murphy v. Woerner, 748 P.2d 749 (Alaska 1988).
Other grounds for appeal raised by appellants were reviewed and found to have merit. However, we need not discuss them due to our ruling on the jurisdictional issue. Without jurisdiction, those appealed-from rulings are nullities.
This matter is reversed and remanded for further proceedings consistent with this opinion after reassignment to a different trial judge of the district.