(867 P.2d 1074)
No. 69,651

In the Matter of the Adoption of BABY GIRL B., a minor.

Petition for review denied 255 Kan. 1001 (1994).

Opinion filed February 11, 1994.

*John J. Juryck, Jr.*, *Nancy S. Anstaett*, and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellants/cross-appellees prospective adoptive parents.

*Jane M. Eldredge*, of Barber, Emerson, Springer, Zinn & Murray, L.C., of Lawrence, for the appellant/cross-appellee natural mother.

*J. Kevin Lund*, of Collister & Kampschroeder, of Lawrence, for the appellee/cross-appellant natural father.

Before Briscoe, C.J., Brazil and LEWIS, JJ.

BRISCOE, C.J.: The natural mother of Baby Girl B. and the prospective adoptive parents (adoptive petitioners) appeal the district court's decision to decline jurisdiction over the adoption after concluding Kansas is an inconvenient forum. Appellants contend the court erred in finding Pennsylvania was a more convenient forum. The natural father cross-appeals, contending the court erred in concluding Kansas has jurisdiction over the adoption.

Prior to the child's birth, both the natural father and the natural mother lived in Pennsylvania with their respective parents. The natural parents were never married. On September 28, 1992, the mother moved from Pennsylvania to Douglas County, Kansas, to live with her uncle, who became her legal guardian on October 6, 1992. The mother planned to attend high school in Douglas County, but a medical problem related to the pregnancy prevented her attendance. Baby Girl B. was born on October 12, 1992, in Douglas County. The mother was 16 years old and the father was 18 years old at the time of the birth. On October 24, 1992, the mother returned to Pennsylvania and finished the school semester. She then returned to Douglas County on December 29, 1992, and planned to attend the second semester there. The father remains in Pennsylvania.

On October 13, 1992, the day after Baby Girl B. was born, the adoptive petitioners, who are residents of Michigan, petitioned the Douglas County District Court for adoption of the child and sought termination of the natural parents' rights. The natural mother consented to the adoption, but the natural father contested the adoption. On that same day, temporary custody of the child was granted to the adoptive petitioners' attorney, who was to place the child in their custody. According to the brief of the petitioners, the child has resided with them since she was discharged from the hospital and returned with them to Michigan, where the petitioners and the child continue to reside. On November 18, 1992, the natural father filed written defenses to the petition for adoption and termination of his parental rights.

On January 4, 1993, an evidentiary hearing was conducted in Douglas County District Court to address the limited question of whether the court had jurisdiction to decide the adoption case. The mother testified she had no plans to return to Pennsylvania and had enrolled at Lawrence High School. Her uncle testified he would remain her legal guardian as long as she remained in Lawrence, unless both of her parents moved to Lawrence. The natural father appeared through counsel. On January 7, 1993, the court held jurisdiction and venue were appropriate in Douglas County because the mother was a resident of Douglas County at the time of the child's birth. The court held the mother, a minor, assumed the residence of her legal guardian, a Kansas resident. The father moved the court to reconsider this finding, contending the mother was not a resident of Kansas when the child was born.

The judge initially assigned to the case recused herself from the case and it was reassigned to another judge. The court found that Kansas had subject matter jurisdiction over the adoption but declined to exercise that jurisdiction. The court applied K.S.A. 38-1307 of the Uniform Child Custody Jurisdiction Act (UCCJA), found Kansas to be an inconvenient forum, and further found Pennsylvania to be the more appropriate forum. The court reached this conclusion after finding there would be more evidence in Pennsylvania than in Kansas on the question of the father's fitness, including his efforts to support the child.

## I. Does the UCCJA apply to adoptions?

The adoptive petitioners initially contended in their appellate brief that the UCCJA (K.S.A. 38-1301 *et seq.*), especially the inconvenient forum provision of K.S.A. 38-1307, does not apply to an adoption proceeding. When the briefs were filed in this case, the parties did not have the benefit of our recent decision in *In re L.C.*, 18 Kan. App. 2d 627, 857 P.2d 1375 (1993), which held the UCCJA is applicable to termination of parental rights cases. In *In re L.C.*, this court recognized the logic of applying the UCCJA to termination cases because the question of who will or will not have custody of a child is inherent in termination cases. At oral argument, counsel for the adoptive petitioners argued the rationale of *In re L.C.* would also compel application

of the UCCJA to adoption proceedings and withdrew the adoptive petitioners' contention that the UCCJA does not apply to adoptions.

We note that, unlike the Kansas Code for Care of Children (K.S.A. 38-1501 *et seq.*), which expressly states the UCCJA is applicable to that Code (K.S.A. 38-1503[b]), there is no statutory reference in the Kansas Adoption and Relinquishment Act (K.S.A. 1993 Supp. 59-2111 *et seq.*) (KARA) or in the UCCJA that the latter necessarily governs questions of jurisdiction or venue in an adoption proceeding. See K.S.A. 1993 Supp. 59-2111 *et seq.*; K.S.A. 38-1301 *et seq.* However, we note that K.S.A. 1993 Supp. 59-2128(a)(1)(F) states that a petition for adoption must include the same information required by the UCCJA in K.S.A. 38-1309. Also, the KARA does not include a jurisdictional provision for independent adoptions, although one is provided for agency adoptions. See K.S.A. 1993 Supp. 59-2127. Further, as the district court in the present case noted, some of the considerations found in 59-2127(a) regarding jurisdiction for agency adoptions are identical to the factors to be considered in determining whether a forum is inconvenient under the UCCJA (38-1307).

Our research has not revealed any Kansas cases specifically addressing whether the UCCJA applies to adoptions. By its language, the UCCJA clearly applies to child custody proceedings. The UCCJA was intended, among other things, to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody," to "discourage continuing controversies over . . . custody," and to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." K.S.A. 38-1301(a)(1), (4), (5). Although *In re L. C.* was a termination of parental rights case, its rationale would also support a conclusion that the UCCJA should apply to adoptions. Who will or will not have custody of a child is also at issue in adoption proceedings. The application of the UCCJA to adoption proceedings is consistent with the stated purposes of the Act.

The father notes that other jurisdictions have applied the UCCJA to adoptions, citing *Gainey v. Olivo,* 258 Ga. 640, 373 S.E.2d 4 (1988); *Foster v. Stein,* 183 Mich. App. 424, 454 N.W.2d 244 (1990); *In re Adoption of B.E.W.G.,* 379 Pa. Super. 264, 549 A.2d 1286 (1988). In *Gainey,* 258 Ga. at 642, the court

proposed: "Whether the UCCJA applies to adoption proceedings depends upon whether an adoption proceeding is a custody proceeding within the meaning of the UCCJA." The court noted the definition of "custody proceeding" is very broad and concluded that applying the UCCJA to adoption proceedings would be consistent with its purposes. In *Foster*, 183 Mich. App. at 427, the court cited *Gainey* and concluded that adoptions are included in the definition of "custody proceeding" as provided by the UCCJA. In *B.E.W.G.*, 379 Pa. Super. at 272-73, the court reviewed a number of cases holding that the UCCJA applied to adoptions and stated:

"Because the effect of a final decree of adoption is to terminate all legal rights between the adopted child and the child's relatives, including grandparents, an adoption decree will necessarily terminate the custody rights of grandparents. In order to prevent by adoption that which cannot be achieved by custody proceedings, the provisions of the Uniform Act must also be applied to adoption proceedings."

The preceding cases are included within Annot., 78 A.L.R.4th 1028. A majority of the cases included in that annotation holds that the UCCJA applies to adoptions. This is consistent with the statement in 1 Elrod, Kansas Family Law Handbook § 6.041A(1) (rev. ed. 1990): "While the [UCCJA] does not specifically state that it applies to adoption proceedings, it does apply in a 'child custody determination.' Most courts have found that the UCCJA applies to adoptions."

"Custody proceeding" is defined in the UCCJA to include "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation." K.S.A. 38-1302(c). This definition is broad enough to include adoption proceedings, which inherently determine custody issues. In fact, in the present case, temporary custody was granted to the adoptive petitioners and, if they are successful in their adoption, such a decision will terminate the natural father's parental rights, which for him will be the ultimate and final custody determination. Therefore, we conclude the UCCJA is applicable to adoption proceedings.

## II. Does Kansas have jurisdiction?

In his cross-appeal, the natural father contends Kansas does not have jurisdiction over this adoption proceeding. He challenges the Kansas court's initial exercise of jurisdiction in awarding tem-

porary custody to the adoptive petitioners, as well as its continued exercise of jurisdiction in this case. To support his contention, the father notes that, in Kansas, "domicile" and "residence" are equivalent for jurisdictional purposes. See *Lines v. City of Topeka*, 223 Kan. 772, 776, 577 P.2d 42 (1978); *Gleason v. Gleason*, 159 Kan. 448, 450, 155 P.2d 465 (1945). He also notes that, in an adoption proceeding, unless the father has custody, the residence of a child whose parents are unmarried is the residence of the child's mother. K.S.A. 1993 Supp. 59-2112(e)(1). He further notes that, as a minor, the mother in this case does not have capacity to select her own domicile or residence. *Robben v. Robben*, 188 Kan. 217, 220, 362 P.2d 29 (1961). The father argues the mother's domicile or residence is that of *her* father, which would be Pennsylvania. He also argues the guardianship was defective because the court was without jurisdiction to appoint a guardian for the mother under the UCCJA. He concludes that both the mother and the child are residents of Pennsylvania.

At the heart of the father's arguments is the assumption that the venue provision of the KARA is equivalent to a jurisdictional provision. As we have concluded the UCCJA applies to adoption proceedings, the UCCJA will determine jurisdiction.

Whether a court has jurisdiction under the UCCJA is a question of law and is subject to de novo review. See *Zion Lutheran Church v. Kansas Comm'n on Civil Rights*, 16 Kan. App. 2d 237, 239, 821 P.2d 334 (1991), *aff'd* 251 Kan. 206, 830 P.2d 536 (1992). Whether a court exercises or declines jurisdiction under the inconvenient forum provision of 38-1307 is a decision reached through the exercise of the court's discretion. The prime consideration in determining if a court is an inconvenient forum is the best interests of the child. *In re Wicks*, 10 Kan. App. 2d 124, 126, 693 P.2d 481 (1985); K.S.A. 38-1307(c). The factors listed in 38-1307(c), among others, may be taken into account in making that determination.

The jurisdiction provision of the UCCJA is K.S.A. 38-1303, which provides in part:

"(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise a child in need of care; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction."

## A. Home state.

K.S.A. 38-1302(e) provides:

" 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

In his cross-appeal, the father argues Kansas is not the home state because, although the child was less than six months old at the time of these proceedings, she did not live with the natural mother in Kansas from birth. The mother argues the child did live with her until the adoption proceeding commenced. The record indicates the child was born near midnight on October 12 and, the day after the birth, the adoption petition was filed and custody was granted to the adoptive petitioners. The record does not establish with whom the child lived while she was in Kansas.

Further, even if the child was with her mother during their brief hospital stay, the facts revealed by the record would not satisfy the requirement in 38-1302(e) that the child "lived with"

the mother from birth. The requirement that the child "live with" the mother from birth requires more than the mother and newborn child staying at the same hospital for a brief period. When considering a similar provision in the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1988), the court in *Rogers v. Platt*, 641 F. Supp. 381, 386 (D. D.C. 1986), stated, "[T]o 'live with' someone requires a deliberate manifestation to share a common place with the person during a substantial period of the time involved. Since an infant cannot make such a manifestation, the Court must look to the mother in this situation." The court in *Rogers* went on to conclude that, where the mother never saw the child after birth, signed a release permitting the hospital to give other individuals temporary custody of the baby a few hours later, and left the hospital without the child, the court could not conclude the child lived with the mother from birth. Here, the record is insufficient to support a finding that the child lived with the mother in Kansas from birth. Kansas was not the child's home state when the adoption proceedings were commenced.

K.S.A. 38-1303(a)(1) refers to the child's home state "at the time of commencement of the proceeding." The record does not state where the child was on the day after birth when the adoption proceedings were commenced. The petition was filed at 4:42 p.m. on October 13, and the adoptive petitioners, through their attorney, were granted temporary custody at 5:18 p.m. on October 13. The natural father argued before the district court that the child was not in Michigan until after the case was filed. The timing of the filing of the petition and of the order granting temporary custody appear to bear this out. Michigan, then, cannot be considered the child's home state. Clearly, Pennsylvania is not the child's home state. Applying 38-1302(e) to the present case, the child has never lived in Pennsylvania with a parent, parents, or a person acting as a parent. On the record presented, we have no basis for concluding the child had a home state when the proceedings were commenced.

### B. Other jurisdictional bases.

Did Kansas have jurisdiction of this adoption proceeding under any of the other subsections of 38-1303? "Jurisdiction can exist

under subsection (a)(2) . . . if the children *and* at least one of the contesting parents have a 'significant connection' with Kansas and 'substantial evidence' is available here as to the children's present or future care, protection, training, and personal relationships." (Emphasis added.) *Larsen v. Larsen*, 5 Kan. App. 2d 284, 287, 615 P.2d 806, *rev. denied* 228 Kan. 807 (1980). Although 38-1303(a)(2) speaks of "parents," the Act distinguishes between one or both parents. Kansas cases appear to require that one parent have a significant connection with the state. See *Hart v. Hart*, 236 Kan. 856, 861, 695 P.2d 1285 (1985); *Bills v. Murdock*, 232 Kan. 237, 241, 654 P.2d 406 (1982); *Larsen*, 5 Kan. App. 2d at 287. In this case, arguably the mother and the child had a significant connection with Kansas when the adoption proceedings were commenced.

Although the father clearly has a significant connection with Pennsylvania, the child does not. See *Bills*, 232 Kan. at 241-43. Therefore, under 38-1303(a)(2), Pennsylvania would not have jurisdiction either at the time the adoption proceedings were commenced or at the present time. Because the child has lived most of her life in Michigan with the adoptive petitioners, there is a significant connection with that state and substantial evidence concerning the child's care, protection, training, and personal relationships would exist in Michigan. Further, venue would be proper where the adoptive petitioners live. K.S.A. 1993 Supp. 59-2126(a).

The court's finding that Kansas had jurisdiction when the adoption proceedings were commenced is affirmed. The court's finding that Pennsylvania had jurisdiction and was the proper venue for this adoption proceeding is reversed. The case is remanded for further development of the record on the issue of whether Kansas or Michigan has jurisdiction over this adoption proceeding and, if both have jurisdiction, which is the more convenient forum.

Affirmed in part, reversed in part, and remanded for further proceedings.