893 P.2d 749

**J.D.S. and J.L.S., his minor child, Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Pamela J. Franks, a judge thereof, Respondent Judge,**

**G.H. and K.H., Real Parties in Interest.**

No. 1 CA–SA 94–0054.

Court of Appeals of Arizona, Division 1, Department B.

May 5, 1994.

As Corrected June 22, 1994.

**100**

David L. Rose P.C. by David L. Rose, Phoenix, for petitioner.

Jennings, Strouss & Salmon, P.L.C. by Rita A. Meiser, James M. Ackerman, Robert D. Haws, Phoenix, for real parties in interest.

Ann M. Haralambie P.C. by Ann M. Haralambie, Tucson, for amicus curiae Arizona Council of Attys. for Children.

Charles G. Ollinger, III, Paradise Valley, for amicus curiae Family & Friends in Support of Divorce Reform, Inc.

## OPINION

WEISBERG, Presiding Judge.

J.D.S. ("the father") petitions for relief from the trial court's ruling that Arizona lacked jurisdiction over custody proceedings and its order quashing his Writ of Habeas Corpus. We accept jurisdiction and grant relief.

## FACTS AND PROCEDURAL HISTORY

Petitioner is the unwed father of a child born on August 8, 1993. Although never married, the biological parents had previously lived together. Prior to the baby's birth, the biological mother ("the mother") contemplated placing the child for adoption. At that time, the father indicated that he would never sign any papers or authorizations to give up the child for adoption. Although the mother contacted a local attorney and later an adoption agency regarding placing her child for adoption, both refused to assist her because of the father's refusal to consent.

Finally, the mother located attorney Kerry Moore ("Moore") who was willing to arrange for an out-of-state adoption of the child without the father's consent. Arrangements were made to place the child in Florida with the Real Parties in Interest, K.H. and G.H. During the mother's pregnancy, Moore, on behalf of K.H. and G.H., gave money to her for living expenses.

Immediately after the baby's birth, the mother changed her mind about the adoption. The father visited the child in the hospital, and his name was listed on the birth certificate. The mother has provided contradictory affidavits regarding the father's relationship with the child. In her first affidavit in support of placing the child for adoption, the mother alleged that the father provided only sporadic support for the child. In her second affidavit, the mother alleged that her first affidavit was coerced. She further alleged, as did the father in his affidavit, that he visited with the child regularly, performed numerous parental duties, such as changing her diapers, feeding, bathing and clothing her, and that he had provided financial support during her pregnancy and after the child's birth.

During the two to three months following the child's birth, the mother met with Moore or her paralegal several times and finally agreed to give the child up. On November 22, 1993, without the father's knowledge, the mother signed a relinquishment of her parental rights and other adoption papers allowing the child to be adopted by K.H. and G.H. in Florida. On the same day, an application was made to have the child released to K.H. and G.H. under the Interstate Child Placement Compact ("Compact").[1] The application indicated that both parents' rights had been terminated, and failed to supply any information regarding the father. The mother then gave the child to Moore. Later that day, however, the mother began to have regrets and sought the return of the child from Moore. Moore refused and told her that her consent was irrevocable.

On the next day, the father came to the mother's apartment to visit the child. The mother told him that on the previous day Child Protective Services had taken custody of the child. The father then contacted Child Protective Services, but could not get any information regarding the child. The Compact administrator approved the placement of the child with K.H. and G.H. on November 23, 1993, without any attempt either to contact the father or to investigate the alleged termination of his parental rights.

At the mother's insistence, Moore arranged for her to meet with K.H. and the child on November 24, 1993. At that meeting, the mother pleaded for the return of the child, but K.H. refused and returned to Florida with the child. Adoption proceedings regarding the child were then instituted by the Hartgraves in Alachua County, Florida.

On December 3, 1993, the mother told the father that her story about Child Protective Services taking the child was not true, and that she had given the child up for adoption through Moore. The father immediately contacted Moore and demanded the return of the child. Moore refused. The father then retained counsel and obtained a Writ of Habeas Corpus. K.H. and G.H. challenged jurisdiction and moved to quash the Writ.

The trial court held that the Uniform Child Custody Jurisdiction Act[2] ("UCCJA") did not apply to these proceedings, that the provisions of the Compact had been met, and that the Compact superseded the UCCJA. The trial court concluded that Arizona does not have jurisdiction and that Florida should retain jurisdiction for all relevant proceedings.

This petition for special action followed. In our order dated March 22, 1993, we accepted jurisdiction and granted relief, indicating that a written decision would follow. This is that decision.

### SPECIAL ACTION JURISDICTION

■ We accept jurisdiction because we believe that this issue is one of statewide im-

---

1. Codified at Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 8–548 to 8–548.06 (1989); Fla.Stat.Ann. ("F.S.A.") § 409.401 (West 1993).

2. Codified at A.R.S. §§ 8–401 to 8–424; F.S.A. §§ 61.1302 to 61.1348.

portance, *see Duquette v. Superior Ct.*, 161 Ariz. 269, 271, 778 P.2d 634, 636 (App.1989), and that the father has no plain, speedy, or adequate remedy on appeal because of the special nature of custody proceedings, where delay may result in both significant deprivation of parental rights and detriment to the child. *See Caruso v. Superior Ct.*, 100 Ariz. 167, 170, 412 P.2d 463, 465 (1966); *Silver v. Rose*, 135 Ariz. 339, 343, 661 P.2d 189, 193 (App.1982).

## STANDARD OF REVIEW

The trial court based its decision solely on documentary evidence consisting of application forms and affidavits. When the trial court resolves fact issues based solely on documentary evidence, review is de novo, and this court may make its own analysis of such evidence. *Broemmer v. Abortion Servs., Ltd.*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992); *Purvis & Tanner v. Hartford*, 179 Ariz. 254, 877 P.2d 827 (App. 1994).

## DISCUSSION

### Due Process Considerations

A parent's right to the custody and control of one's child is a fundamental interest guaranteed by the United States and Arizona Constitutions. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Cochise County Juvenile Action No. 5666–J*, 133 Ariz. 157, 161, 650 P.2d 459, 463 (1982). Also, the right to due process extends to an unwed father's relationship with his illegitimate child. *See Stanley*, 405 U.S. at 657, 92 S.Ct. at 1215–16; *Caban v. Mohammed*, 441 U.S. 380, 394, 99 S.Ct. 1760, 1769, 60 L.Ed.2d 297 (1979); *Lehr v. Robertson*, 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983).

When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children."

*Lehr*, 463 U.S. at 261, 103 S.Ct. at 2993 (citations omitted).

The existence of a meaningful parent-child relationship is crucial in determining the extent to which a natural father's relationship with his illegitimate child deserves protection under the Due Process Clause. The facts submitted in this case indicate that the father had an ongoing relationship with his child, that he assisted in the care of his child, and that he provided the child with financial support. Under these circumstances, due process considerations require that the father's rights be honored, until otherwise lawfully abridged, before his child may be removed to another state for adoption proceedings.

Arizona protects parental rights by requiring that consent be obtained from both birth parents prior to an adoption unless a birth parent has been declared incompetent, his or her parental rights have been judicially terminated, or the parent has previously consented to the adoption. *See* A.R.S. § 8–106. Before parental rights can be terminated, it must be determined that the child was either abandoned, neglected or wilfully abused by the parent, or that the parent suffers from mental illness, has been found to be an unfit parent, or has voluntarily relinquished his or her right to the child. A.R.S. § 8–533.

If a mother voluntarily relinquishes her parental rights, as happened in this case, the law presumes that the natural father is entitled to custody. *Caruso*, 100 Ariz. at 173, 412 P.2d at 467. Also, a custody decree is not necessary for a natural parent of a child to be entitled to custody of that child, absent an order to the contrary. *State v. Grooms*, 145 Ariz. 439, 440, 702 P.2d 260, 261 (App. 1985).

In the instant case, the father has never relinquished his parental rights, has never been declared incompetent, and has never had his parental rights terminated. When the mother voluntarily relinquished her parental rights, he became entitled to custody of the child, absent a judicial determination to the contrary. Yet, he received no notice before his child was taken to Flori-

da for adoption proceedings. Clearly, his right to due process was violated.

## Jurisdiction

The Hartgraves argue that Florida has jurisdiction over all proceedings involving this child because placement of the child was valid, having been approved by the Compact administrators of both Arizona and Florida. They argue that, under the Compact, once the transfer has been made with the approval of both administrators, jurisdiction is vested in Florida as the receiving state. They also argue that the UCCJA does not apply to adoption proceedings. Finally, they maintain that the father has not been harmed, since his custodial rights may still be considered by the Florida court.

The father argues that he is entitled to the custody of his child, and that he should not be forced to litigate in Florida without his consent. He argues that the transfer was invalid under the Compact because its provisions were not complied with, and that, in any event, it is the UCCJA which controls these proceedings. He concludes that, because Arizona is the "home state" under the UCCJA, Arizona has jurisdiction over these custody proceedings and that the trial court therefore abused its discretion by failing to exercise that jurisdiction.

In its ruling, the trial court concluded that the Compact had been complied with, that the UCCJA was superseded by the Compact, and that, under the Compact, Florida had jurisdiction over the proceedings. We disagree with each of these conclusions.

### 1. Compact Versus UCCJA

■ The Compact has been enacted by forty-eight states to promote cooperation between states in the interstate placement of children. Compact, art. I. It requires that prior administrative conditions be met before a child may be transported interstate for foster care or adoptive placement. Compact, art. III. Each state has appointed an administrator to coordinate its activities with similar officers of other jurisdictions. Compact, art. VII.

■ On the other hand, the UCCJA was enacted to address *jurisdictional* problems arising in *interstate child custody* proceedings, and to promote cooperation between the *courts* of different states. Most courts have applied the jurisdictional provisions of the UCCJA to all interstate child custody disputes, even when arising as part of termination of parental rights cases [3] and adoption cases.[4] The leading treatise on adoption explains the interplay between these uniform acts:

> The UCCJA and PKPA [5] [Parental Kidnapping Prevention Act] are jurisdictional and "full faith and credit" statutes that determine which state may exercise jurisdiction over an original custody proceeding or a proceeding to modify an existing custody order.... [A] substantial majority of courts that have considered the question of the UCCJA's and PKPA's applicability to adoption proceedings have agreed that these statutes are applicable to both uncontested and contested adoptions. Once the provisions of the UCCJA and PKPA are invoked to determine jurisdiction, the court exercising jurisdiction is of course bound to apply the substantive law of its state to the subject matter of the proceeding. If the subject matter pertains to an interstate placement, the ICPC will apply, not to the issue of the court's authority to

---

3. *See, e.g., In re L.C.*, 18 Kan.App.2d 627, 857 P.2d 1375, 1377 (1993); *In re M.C.S.*, 504 N.W.2d 322, 324 (S.D.1993); *In re A.E.H*, 161 Wis.2d 277, 468 N.W.2d 190, 199–200 (1991).

4. *See, e.g., Souza v. Superior Ct.*, 193 Cal.App.3d 1304, 238 Cal.Rptr. 892, 895–96 (1987); *In re K.C.P.*, 432 So.2d 620, 621–22 (Fla.Dist.Ct.App. 1983); *Gainey v. Olivo*, 258 Ga. 640, 373 S.E.2d 4, 6 (1988); *Noga v. Noga*, 111 Ill.App.3d 328, 67 Ill.Dec. 18, 19, 443 N.E.2d 1142, 1143 (1982); *In re B.*, 19 Kan.App.2d 283, 867 P.2d 1074, 1078

(1994); *Foster v. Stein*, 183 Mich.App. 424, 454 N.W.2d 244, 246 (1990); *In re W.*, 701 S.W.2d 534, 545 (Mo.App.1985); *In re Peterson ex rel. Peterson*, 203 Mont. 305, 661 P.2d 40, 43 (1983); *E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871, 878–79 (1982); *State ex rel. Torres v. Mason*, 315 Or. 386, 848 P.2d 592, 593–94 (1993); *In re B.E.W.G.*, 379 Pa.Super. 264, 549 A.2d 1286, 1290 (1988); *In re Steven C.*, 169 Wis.2d 727, 486 N.W.2d 572, 573 (App.1992).

5. 28 U.S.C. § 1738A (1988).

hear the case, but to the substantive issue of whether the placement is appropriate ... The validity of a court's exercise of jurisdiction depends on the UCCJA and PKPA, not the ICPC.

... [A]ny conflict about the scope of the ICPC should be resolved in favor of the UCCJA and PKPA ... the ICPC does not empower courts to exercise jurisdiction; it must yield to the provisions of the UCCJA and PKPA concerning the child's "home state" or the state which has a "significant connection" to and "substantial evidence" about the child.

1 Joan H. Hollinger, et al., Adoption Law and Practice § 3–A.11, at 108–09 (Joan H. Hollinger ed., Supp.1993).

 In the case at hand, the father seeks custody of his child and the termination of the adoption proceedings initiated by the Hartgraves in Florida. This is clearly a "child custody" proceeding within the parameters of the UCCJA. Where there is an interstate jurisdictional conflict, the UCCJA is the appropriate statute to resolve the issue. We therefore conclude that the UCCJA is applicable and has not been superseded by the Compact.

## 2. Application of the UCCJA

The UCCJA vests Arizona with jurisdiction to make child custody determinations if any one of four criteria is met. A.R.S. § 8–403(A). The first criterion is that Arizona be the home state. "Home state" is defined as

the state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six month or other period.

A.R.S. § 8–402(5).

Arizona can exercise jurisdiction if it is:

... the domicile or the home state of the child at the time of commencement of the proceeding or had been the child's domicile or home state within six months before

commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

A.R.S. § 8–403(A)(1).

 Applying the above-quoted statutes, we conclude that Arizona is the home state of the child. First, where the child is under six months old, the "home state" is the state where the child lived from birth. The critical date for determining home state status is the date the proceedings were commenced. *Pima County Juvenile Action No. J–78632*, 147 Ariz. 527, 532, 711 P.2d 1200, 1205 (App.1985). In this case, the proceedings were commenced on December 7, 1993, when the child was four months old.

Second, the child is absent from Arizona because of her removal for custody purposes. Prior to her removal by the Hartgraves, the child lived continuously in Arizona with a parent. She resided in Florida for only one week before the adoption action was initiated there. Since the child was under six months old and Arizona was the "state in which the child lived from birth" with her mother, and since "home state" status cannot be destroyed by the removal of the child for custody purposes, Arizona remains the child's "home state", and it has jurisdiction under A.R.S. section 8–403(A)(1).

The second criterion set forth by the UCCJA is met when

[i]t is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.

A.R.S. § 8–403(A)(2).

 Applying this subsection, we note that the child and her parents have a significant connection with Arizona. Both parents are Arizona residents, the child was born in Arizona, and the child lived the first four months of her life here. In addition, there is

available in Arizona substantial evidence concerning the care, protection, training, and personal relationship afforded to her by her father.[6] We therefore conclude that Arizona has jurisdiction of this matter because it is the state with a significant connection to the parents and child, and it is the state where there is located substantial evidence concerning the child's care, protection, training, and personal relationships.

The third criterion for exercising jurisdiction is the "emergency" situation:

> The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

A.R.S. § 8–403(A)(3).

The parties did not allege below that jurisdiction is appropriate in either Florida or Arizona because of abandonment or the need to protect her from abuse or neglect. Therefore, the "emergency" provision is not applicable here.

Finally, jurisdiction may be conferred if no other state has jurisdiction under these sections, or another state has declined jurisdiction.

> [This court should exercise jurisdiction if it] appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the

best interest of the child that this court assume jurisdiction.

A.R.S. § 8–403(A)(4).

Since neither party has asserted the application of this last criterion, we decline to consider it at this time.

The Hartgraves also argue that, since the Florida action was filed first in time, A.R.S. section 8–406 requires that Arizona defer to the Florida proceeding.

> A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state *exercising jurisdiction substantially in conformity with this chapter* ...

A.R.S. § 8–406(A) (emphasis added).

Accordingly, before an Arizona court is required to defer to a court of another state, the non-Arizona petition must be filed first in time *and* the other state must be exercising jurisdiction substantially in conformity with the UCCJA.[7] Although the Florida petition was filed one week prior to the Arizona petition, we conclude that the Florida court could not exercise its jurisdiction in conformity with the UCCJA because Arizona is both the child's home state and the state with the closest connection to the child. Also, neither the third nor fourth criterion could vest Florida with jurisdiction because the Hartgraves did not claim that the prerequisite "emergency" exists, and Arizona does not now decline to exercise its jurisdiction over these matters. We therefore hold that under the UCCJA only Arizona has jurisdiction to consider the instant child custody dispute.[8]

---

6. We also note that these and other similar factors must be considered before father's parental rights may be terminated, and the adoption by the Hartgraves allowed. *See* A.R.S. § 8–106; F.S.A. § 63.072. All of the relevant evidence concerning his parental qualities exists in Arizona. Therefore, it would be both unfair and uneconomical to require the father to contest the termination proceedings in Florida.

7. The UCCJA was designed to bring order to the chaos that had resulted from the application of vaguer doctrines such as comity. It establishes jurisdictional guidelines and limits custody jurisdiction to a state where the child has his or her home, or where there are other strong contacts

with the child and his or her family. UCCJA § 3; A.R.S. § 8–403; F.S.A. § 61.1303. The dissent agrees that, in the instant case, Arizona is the child's home state. To avoid chaos, we must follow those guidelines provided by the uniform act.

8. Although the dissent argues that, under the principles of comity, the Arizona court should defer to the Florida court, the cases cited in support are inapposite. Neither *Lofts, Palm* nor *Rector* was decided on the basis of comity. *See Lofts v. Superior Ct.,* 140 Ariz. 407, 682 P.2d 412 (1984); *Palm v. Superior Ct.,* 97 Cal.App.3d 456, 158 Cal.Rptr. 786 (1979); *In re Custody of Rector,* 39 Colo.App. 111, 565 P.2d 950 (1977). All

### 3. Application of the Compact

■ Even assuming arguendo that the Compact controls the issue of jurisdiction, Arizona would retain jurisdiction over these proceedings because the child has not yet been adopted, and because the requirements of the Compact were not complied with prior to the transfer. Article V of the Compact provides that

> the sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law.

Compact, art. V(a).

As the sending state, Arizona retains jurisdiction "until the child is adopted, reaches majority, becomes self supporting, or is discharged with the concurrence of the appropriate authority in the receiving state." The record indicates that the child has not yet been adopted, is only seven months old, and obviously is not self supporting. Therefore, by the very terms of the Compact, jurisdiction must be retained in Arizona.

■ In addition, the record fails to support the contention that the transfer of the child to Florida was in accordance with the Compact. In the instant case, the Compact was utilized to carry out the out-of-state placement of the child pending her adoption. In such circumstances, compliance with statutory provisions is mandatory, *Lee v. Superior Ct.*, 25 Ariz.App. 55, 57, 540 P.2d 1274, 1276 (1975), particularly with respect to the court's jurisdiction or when the adoption will deprive the natural parent of the child's possession. *Maricopa County Juvenile Action*

*No. A–25646*, 130 Ariz. 589, 590, 637 P.2d 1092, 1093 (App.1981).

■ The record clearly indicates that the provisions of the Compact were not complied with prior to the transfer of the child to Florida. Before a child may be transferred to another state, Article III of the Compact requires that "the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice *shall* contain ... [t]he identity and address or addresses of the parents or legal guardian." Compact, art. III(b)(2) (emphasis added).

Even though the identity of the father was known to all parties, Compact Form 100A failed to include such information. Furthermore, Compact Form 100A incorrectly indicated that the father's parental rights had been terminated. In fact, all pertinent information about the father was left blank on the information sheet submitted to the Compact administrator for the approval of the transfer. Such omissions constitute more than a technical oversight that may be corrected retroactively. Rather, they constitute substantive omissions that deprived the father of fundamental rights. Had the required information concerning the father's parental rights been supplied, it would have been clear to the Compact administrators that his right to custody prevented the lawful transfer of the child under both Arizona and Florida laws. *See Caruso*, 100 Ariz. at 173, 412 P.2d at 467; *In re M.Q.*, 475 So.2d 1306, 1308 (Fla.Dist.Ct.App.1985).

Furthermore, the record also indicates that the transfer to Florida is far from complete. First, the record shows that the Arizona administrator has never formally "discharged" the child. Second, the approval transmittal issued by the Florida administrator indicates that Florida will *not* accept legal custody or jurisdiction until it has received Form 100B from the Arizona administrator. The record further indicates that Form 100B has not been forwarded to Florida by the

---

were decided under the UCCJA on the premise that a second state had jurisdiction under the UCCJA because it had proceeded first in time and·was acting in substantial conformity with it.

In the instant case, there simply is no plausible argument that the Florida proceeding is in substantial conformity with the UCCJA. UCCJA § 6; A.R.S. § 8–406; F.S.A. § 61.1306.

Arizona administrator. Once again, even by the very documents used to transfer the child purportedly pursuant to the Compact, it does not appear that jurisdiction for even Compact purposes has been vested in Florida.

Because the child has not yet been adopted, because the requirements of the Compact have not been complied with, and because the father was not given notice of the proposed placement, Arizona would retain jurisdiction over the child even if the Compact were to control. Such jurisdiction would include the authority to require the return of the child to Arizona. Compact, art. V(a).

## CONCLUSION

Jurisdiction over the custody proceedings vests in Arizona. Therefore, the court's order is vacated and the respondent judge is instructed to take all necessary measures to secure the return of the child to the State of Arizona for further proceedings consistent with this opinion.

TOCI, J., concurs.

CONTRERAS, Judge, dissenting.

I voted to decline to accept jurisdiction in this special action for a number of reasons. First, in my opinion, the courts of this state lack the power to issue writs of habeas corpus to secure the return of persons outside of Arizona. Furthermore, the courts of this state also lack the authority to advise the courts of Florida on issues of its own jurisdiction particularly before Florida has finally resolved such matters.[9]

In examining the adequacy of available remedies, this court should also be cognizant of the potential for delay occasioned by accepting special action jurisdiction. *See Ft. Lowell–NSS Ltd. Partnership v. Kelly*, 166 Ariz. 96, 100, 800 P.2d 962, 966 (1990). The

majority's desire to afford immediate relief to the father may actually delay any favorable outcome in this case. The mandate in this case must be domesticated, and hence "relitigated," in the state of Florida where the child is now located. The special action relief granted by this court could postpone the ultimate outcome in Florida.

The procedural context of this dispute has not been fully considered. It is well settled that writs for habeas corpus in state proceedings cannot extend beyond state lines. Specifically, a petition for a writ of habeas corpus filed in an adoption case seeking return of a child being adopted should be filed in the state in which adoption proceedings are pending. *Application of Peterson on Behalf of Peterson*, 203 Mont. 305, 661 P.2d 40 (1983). In *Peterson*, a case analogous to the one at bar, the Montana court held that a Montana mother who had executed consent forms in Montana and placed the child with a couple in Wyoming, where adoption proceedings were commenced, must properly contest her consent in the Wyoming courts. Interpreting the same UCCJA the majority construes above, the Montana court concluded that it was for the Wyoming court in which the proceedings were pending to determine that Wyoming was an inconvenient forum; the issue of Wyoming's jurisdiction was not properly before the courts of Montana. *Id.* 661 P.2d at 43. *See also Palm v. Superior Court of San Diego County*, 97 Cal.App.3d 456, 158 Cal.Rptr. 786, 791 (1979) (UCCJA does not give a court authority to determine it has a superior right to proceed where another court is also asserting jurisdiction). Although the petitioner father in the present dispute makes a persuasive case for *forum non conveniens*, his arguments are better addressed to the Florida courts because prior adoption proceedings have been brought in that state.[10]

---

9. Although I decline to accept jurisdiction in this proceeding, I candidly admit that the limited record before this court presents a strong position in favor of the father.

10. Requiring the petitioner to argue his cause in Florida courts will not deprive him of a substantial right because the statutes controlling the natural father's parental rights are essentially the

same, and the ultimate outcome is unlikely to vary. *Compare* A.R.S. § 8–106; *Matter of Maricopa County Juvenile Action No. JA–33794*, 171 Ariz. 90, 93, 828 P.2d 1231, 1234 (App.1991) *with* F.S.A. §§ 63.062 and 63.072; *Collins v. Cottrill*, 388 So.2d 302 (Fla.App.1980); *Durden v. Henry*, 343 So.2d 1361 (Fla.App.1977).

For similar reasons, I believe the UCCJA has been misconstrued by the majority. The majority is correct that Arizona is the child's home state, because the child was born in Arizona and lived here for the first four months of her life. However, A.R.S. section 8–406 provides that the Arizona courts shall not exercise jurisdiction if, at the time a petition is filed in Arizona, a proceeding concerning the child's custody is pending before the court of another state asserting jurisdiction in conformity with the UCCJA, unless the foreign proceeding has been stayed. *Lofts v. Superior Court,* 140 Ariz. 407, 682 P.2d 412 (1984). The majority states, *ante* at page 756, that Florida did not exercise its jurisdiction in conformity with the UCCJA and that Arizona may therefore assert jurisdiction merely because it is the child's home state. This statement overlooks the fact that the petitioner is collaterally attacking the jurisdiction of Florida courts in an Arizona forum. A decision in a collateral attack is limited only to a finding that the matter of jurisdiction in the other State was "fully and fairly litigated and finally decided in the court which rendered the original judgment." *Lofts,* 140 Ariz. at 410, 682 P.2d at 415 (citing *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Assoc'n,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)). Clearly, in the present proceedings, the Florida court has not fully and fairly litigated this issue. From the present record it appears that no objection to Florida's jurisdiction has been raised in that court. It also appears that no motion pleading *forum non conveniens* has been presented to that court. Furthermore, no request for a stay has been directed to that court. *See In re Custody of Rector,* 39 Colo.App. 111, 565 P.2d 950, 952 (1977) (Under UCCJA, proper course of action is to request stay from court in which case is pending.). In short, the Florida court has not been afforded the opportunity to consider, let alone determine, its own jurisdiction. In my opinion, it is improper for this court to entertain a collateral attack on that non-existent determination.

Predictability and consistency are the cornerstones of the jurisdictional law of this country. The monetary ability of litigants to travel to a distant courthouse is not, and should not be, the dispositive factor in jurisdictional disputes which implicate the long-standing doctrines of inter-jurisdictional deference and respect. In its desire to afford immediate relief to an aggrieved party in an emotionally charged situation, the majority has seemingly ignored the comity afforded to the court of our sister state and has released an anomaly into a highly volatile area of the law.

For the foregoing reasons, I would decline to accept jurisdiction in this special action.