549 A.2d 1286

## In re ADOPTION OF B.E.W.G. and S.L.W.G.

### Appeal of Howard L. WEST and Kay West.

Superior Court of Pennsylvania.

Argued June 14, 1988.

Filed Oct. 24, 1988.

---

Donald B. Hoyt, York, for appellants.

Wanda Neuhaus, York, for appellees.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

The issue in this appeal is whether the Orphans' Court in York County, Pennsylvania, could properly order an adoption of two minor children upon the sole consent of the children's father, who had killed the children's mother, while a custody action was pending in New York between the children's father and maternal grandparents, without notice to the maternal grandparents or the New York court in which the custody action was pending.

On December 4, 1983, the children's father killed their mother by stabbing her to death in the family's home in Brooktondale, Tompkins County, New York. At the time of

the stabbing, B.E.W.G., then ten months of age, was present in the home, but S.L.W.G., then four years of age, was visiting her paternal grandfather in New York City. Afterwards, the paternal grandfather also took B.E.W.G. to his home.

On December 21, 1983, the maternal grandparents, Howard and Kay West, filed a petition in the Tompkins County Family Court to obtain custody of their grandchildren. The children's father had been released on bail, however, and, by order of March 26, 1984, the New York court placed the children in his custody, while awarding visitation privileges to the Wests. This order was to remain in effect until the criminal charges against the father were determined. On May 15, 1984, the Tompkins County Court continued its custody order in effect but expanded the Wests' visitation privileges. Thereafter, the father took the children from their home in New York, and the Wests did not see them again.

On May 22, 1984, the children's father was found guilty of manslaughter in connection with the killing of his wife, the children's mother.[1] Thereafter, on May 29, 1984, the Tompkins County Family Court entered an order awarding temporary custody of S.L.W.G. and B.E.W.G. to the Wests pending further hearing. When an additional hearing was held on June 11, 1984, the father refused to disclose the whereabouts of the children. The New York court thereupon continued temporary custody in the Wests. On November 9, 1984, a final order was entered which awarded permanent custody of the children to their maternal grandparents.

In August, 1985, the grandparents learned for the first time that the children were living with adoptive parents somewhere in Pennsylvania. Unbeknownst to them, the children's father had delivered the children to Tressler–Lutheran Associates, Inc. of York, Pennsylvania, for adoption, and had executed a "temporary custody agreement" by

---

**1.** He is presently serving a term of imprisonment for not less than $8\frac{1}{3}$ years nor more than 25 years in New York.

which he surrendered the children to the agency on a temporary basis until a decision could be made regarding the children's welfare and custody. Subsequently, the children had been placed by their father and the Tressler–Lutheran Agency in a private home for adoption. On May 16, 1984, the adopting parents filed a report of their intention to adopt the children pursuant to 23 Pa.C.S. § 2531; and on June 4, 1984, a petition for adoption was filed. At a hearing thereon, the Orphans' Court of York County was told the circumstances surrounding the death of the children's mother and that their father had been convicted of manslaughter. The court was also informed of the custody proceedings in New York, that the maternal grandparents had been granted visitation, and that they would likely seek permanent custody of the children if the father were convicted and sentenced to prison.[2] At the end of the hearing, the court raised an issue regarding its jurisdiction, deferred making a decision, and continued the hearing until June 25, 1984. It requested counsel "to give the court some assurance ... that the courts of the State of New York do not already have legal jurisdiction over these two children so that the courts of Pennsylvania have no authority at all [or] jurisdiction to take any action[ ]...." On June 25, 1984, the York County court entered a decree allowing the adoption of S.L.W.G. and B.E.W.G. The record does not disclose that further consideration was given to the custody proceedings in New York or the decree of the New York court which had awarded custody of the children to their maternal grandparents.

The Wests, on January 14, 1986, filed in York County, Pennsylvania, a petition to inspect the impounded record of the adoption proceedings. They also requested that the adoption decree be vacated. Their petition was dismissed on grounds that they lacked standing. On appeal, a panel of this Court reversed. See: *In re Adoption of B.E.W.G.*, 355 Pa.Super. 554, 513 A.2d 1061 (1986). The matter was

---

2. In fact, custody had been awarded to the grandparents on May 29, 1984.

remanded with instructions to permit the grandparents to examine the adoption record and for the court to decide the petition to vacate. On remand, the Wests argued that the court in York County had lacked jurisdiction to decree an adoption and that the proceedings had been defective because they had neither consented to nor received notice of the adoption proceedings. They also alleged that a fraud had been committed on the court and that the father had failed to comply with the strictures of the Interstate Compact on the Placement of Children.[3] The Orphans' Court rejected these arguments and dismissed the petition to vacate the adoption decree.[4] This appeal followed.

An adoption decree is presumed to be valid, and the person challenging it bears the burden of showing its invalidity by clear and convincing evidence. *In the Matter of the Adoption of Christopher P.*, 480 Pa. 79, 84, 389 A.2d 94, 97 (1978); *Singer Adoption Case*, 457 Pa. 518, 522, 326 A.2d 275, 277 (1974); *Chambers Appeal*, 452 Pa. 149, 152–153, 305 A.2d 360, 362 (1973); *List Adoption Case*, 418 Pa. 503, 508–509, 211 A.2d 870, 873–874 (1965). In *List Adoption Case, supra*, the Supreme Court listed five principles of law which are pertinent to a collateral attack on an adoption decree.

In determining this appeal certain principles of law must be kept in mind: (1) an adoption decree entered by a court having jurisdiction over the subject matter and the parties is generally immune from collateral attack, particularly where the record shows a substantial compliance with the adoption statute; (2) where the record in the adoption proceedings affirmatively reveals a lack of jurisdiction, then the adoption decree is subject to collateral attack; (3) notice to a natural parent of the adoption proceedings and the consent of a natural parent, where

---

3. Act of June 13, 1967, P.L. 31, § 761, as amended, 62 P.S. § 761.

4. Sometime in early July, 1984, the adoptive parents · returned the children to the Tressler–Lutheran Agency, and the children were thereafter readopted by other adoptive parents. The propriety of the later adoption is not before us in this appeal. We recognize, however, that our decision in the instant case may have an effect on the validity of the "consents" offered in the later action.

necessary, are jurisdictional prerequisites in an adoption proceeding; (4) when an adoption decree is collaterally attacked, the entry of the decree raises a presumption of its validity and regularity and an implication arises that the court did find the necessary facts and did perform all the steps essential to the jurisdiction of the court; (5) the burden is upon the person attacking an adoption decree to establish its invalidity by clear and convincing evidence.

*Id.* (footnotes omitted).

The Orphans' Court in the instant case determined that the adoption proceedings had not been pursued fraudulently and that the adoption decree had properly been premised upon the father's consent. The circumstances surrounding the children's presence in Pennsylvania, the death of their mother, and the pendency of a custody action in New York had been disclosed to the court in York County. Therefore, it cannot be said that the Tressler–Lutheran Agency and the children's father committed a fraud on the court. The Orphans' Court, moreover, was acting with the consent of the surviving parent of the children. The provisions of 23 Pa.C.S. § 2711(a) are as follows:

**§ 2711.  Consents necessary to adoption**

(a) **General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

(1) The adoptee, if over 12 years of age.

(2) The spouse of the adopting parent, unless they join in the adoption petition.

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

(4) The guardian of an incompetent adoptee.

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

The consent of the person having custody of the adoptee, according to the statute, is necessary only when the adoptee has no parent whose consent is required.

It remains to be determined, however, whether the Orphans' Court of York County, Pennsylvania, had jurisdiction to decree an adoption of children whose temporary custody had been awarded to their grandparents without requiring that notice of the pending adoption and an opportunity to be heard be given to the grandparents or the New York court in which the custody action was still pending. The Adoption Law, at 23 Pa.C.S. § 2721, provides that

".... Notice of the hearing shall be given to all persons whose consents are required and to such other persons as the court shall direct. Notice to the parent or parents of the adoptee, if required, may be given by the intermediary or someone acting on his behalf. Notice shall be by personal service or by registered mail to the last known address of the person to be notified or in such other manner as the court shall direct.

The grandparents, as we have already observed, were not persons whose consents to the adoption were specifically required by the statute. Still, they had been awarded custody of their grandchildren by a New York court in preference to the father who had been convicted of killing the children's mother. To permit the children's father to remove the children from New York and, with the assistance of the Pennsylvania courts, thwart the New York custody decree by an adoption proceeding calculated to cut off the rights of the grandparents is offensive to the judicial mind. The grandparents were, at the very least, entitled to notice and an opportunity to be heard.

If the adoption action in York County, Pennsylvania, had been an action for the custody of the children, the York County court could not have proceeded. Section 5347 of the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S. § 5347, would have prevented a Pennsylvania court from exercising jurisdiction. The statute provides as follows:

## § 5347.   Simultaneous proceedings in other states

(a) **General rule.**—A court of this Commonwealth shall not exercise its jurisdiction under this subchapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this Commonwealth is a more appropriate forum or for other reasons.

(b) **Procedure.**—Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section 5350 (relating to information under oath to be submitted to the court) and shall consult the child custody registry established under section 5357 (relating to registry of out-of-state custody decrees and proceedings) concerning the pendency of proceedings with respect to the child in other states.   If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(c) **Stay;  communication with other court.**—If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 5360 (relating to hearings and studies in another state;  orders to appear) through 5363 (relating to request for court records of another state).   If a court of this Commonwealth has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact.   If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

Several courts have held that these statutory provisions are equally applicable to adoption proceedings. Thus, in the *Matter of the Adoption of K.C.P.*, 432 So.2d 620 (Fla.Dist. Ct.1983), it was held that under the Uniform Child Custody Jurisdiction Act, a Florida court lacked jurisdiction to enter an adoption decree while a custody action was pending in New York. See also: *Noga v. Noga*, 111 Ill.App.3d 328, 67 Ill.Dec. 18, 443 N.E.2d 1142, (1982) (where adoption proceeding already pending in Arkansas, Illinois court properly declined to exercise its jurisdiction to consider petition for visitation rights as the Arkansas adoption proceeding was a custody proceeding within the scope of Uniform Child Custody Jurisdiction Act); *Roth v. Hatfield*, App. No. 82CA 19, 20 & 21, Ohio Court of Appeals, Fourth Appellate Dist., Gallia County (Slip Op. December 28, 1983) (unreported) (Ohio court lacked jurisdiction to enter adoption decree while custody action was on-going in Michigan). Cf. *In re Adoption of Baby Boy W.*, 701 S.W.2d 534 (Mo.App.1985) (Missouri court's jurisdiction to enter adoption decree not defeated by Indiana custody decree where Indiana court lacked jurisdiction under Uniform Child Custody Jurisdiction Act); *E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871 (1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1982) (New Jersey court had jurisdiction of adoption proceeding under Uniform Child Custody Jurisdiction Act, notwithstanding habeas corpus/custody action in Ohio, where Ohio court had declined to exercise its jurisdiction). Contra: *Olivo v. Gainey*, 185 Ga.App. 427, 364 S.E.2d 279 (1987) (Uniform Child Custody Jurisdiction Act inapplicable to adoption proceedings), *overruling In re C.C.B.*, 164 Ga. App. 3, 296 S.E.2d 198 (1982); *In re Johnson*, 415 N.E.2d 108 (Ind.App.1981) (jurisdiction for termination of parental rights is not encompassed by Uniform Child Custody Jurisdiction Act, as such action does not establish or modify custody decree, but is properly determined under adoption statutes). Because the effect of a final decree of adoption is to terminate all legal rights between the adopted child and the child's relatives, including grandparents, an adoption decree will necessarily terminate the custody rights of

grandparents. In order to prevent by adoption that which cannot be achieved by custody proceedings, the provisions of the Uniform Act must also be applied to adoption proceedings. We conclude, in the absence of Pennsylvania precedent to the contrary, that this is the better view.

Our holding is consistent with the reasons for adopting the Uniform Child Custody Jurisdiction Act and the stated purposes thereof. These include, inter alia, the avoidance of "jurisdictional competition and conflict with courts of other states in matters of child custody"; the promotion of "cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child"; the assurance "that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection"; the deterrence of "abductions and other unilateral removals of children undertaken to obtain custody awards." See: 42 Pa.C.S. § 5342(a)(1), (2), (3), (5).

Even if the Uniform Child Custody Jurisdiction Act is not applicable to adoption proceedings, however, it does not follow that Pennsylvania courts can ignore with impunity a custody action or decree in the courts of a sister state. The Pennsylvania Adoption Law, which provides for notice "to such other persons as the court shall direct," requires at the very least that notice of the adoption proceedings be given to the parties to a pending custody action or, as here, to grandparents who have been granted custody of the children by the court of another state. A party who has been awarded custody of the children by a court in preference to a father who has killed the children's mother cannot be ignored by the forum court where the father has attempted to place the children for adoption. The courts of this Commonwealth will not be permitted to become accessories to the conniving act of a parent who attempts to evade a custody order entered by the courts of another state. Here, the father unilaterally had removed the children from the State of New York, in defiance of custody proceedings

there pending, and had surrendered them for adoption in Pennsylvania. The court in Pennsylvania, having had knowledge of the custody proceedings in New York, could not enter an adoption decree calculated to defeat the New York custody decree without communicating with the New York court and giving notice to the persons who had been awarded custody in the New York action. When it nevertheless attempted to do so, the court abused its discretion.

Having determined that the Pennsylvania adoption proceedings were defective, the adoption decree must be vacated.[5]

The order dismissing appellant's petition to vacate the adoption decree is reversed. The adoption decree of June 25, 1984, is vacated and set aside.

---

5. In view of this decision, we do not determine the difficult issue of whether the Interstate Compact, 62 P.S. § 761, has application to a parent who places his children for adoption in another state.