J-S11002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.U., L.U. AND E.U. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.U. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1353 WDA 2020 |

Appeal from the Order Entered November 19, 2020
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  A-20-23

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                      **FILED: May 19, 2021**

S.U. ("Father") appeals *pro se* from the November 19, 2020 order in the Court of Common Pleas of Allegheny County that dismissed, without prejudice, the petition for stepparent adoption, as amended, filed by him and his wife, C.U. ("Stepmother"), with respect to his sons, L.U., born in November of 2014, and twins, L.U. a/k/a Z.L.U. and E.U. a/k/a L.W.U., born in October of 2016[1] (collectively, "the Children").[2]  Upon careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The record includes the birth certificates of Father's twin sons, named Z.L.U. and L.W.U., therein.  In his petition for stepparent adoption, Father requested the names of his twin sons be changed to L.T.U. and E.S.U.  Amended Petition, 8/6/20, at ¶¶ 23-24.  Although no court has changed the legal names of his twin sons, Father identified them by his preferred names in the underlying adoption action and on appeal to this Court.

[2] Stepmother is *not* listed as an appellant.

On May 15, 2020, Father and Stepmother, acting *pro se*, filed the petition for stepparent adoption, wherein they alleged that Father is the natural parent of the Children, and that he married Stepmother in December of 2018. Petition, 5/15/20, at ¶¶ 3, 4, 7. Father and Stepmother alleged that the Children's other biological parent is an anonymous donor. *Id.* at ¶ 19. Thus, they alleged that the Children were conceived by in vitro fertilization "and carried to birth by gestational surrogate[, C.J.]." *Id.* at ¶ 20. They alleged that C.J.'s name appears on the Children's birth certificates, but that C.J., as a "gestational surrogate," is a third party and not a legal parent. *Id.* at ¶¶ 20, 28. Further, they alleged, "There has never been a decree of termination of parental rights relating to" the Children. *Id.* at ¶ 26. In their supplement to the foregoing petition, filed *pro se* on May 19, 2020, Father and Stepmother asserted "the gestational surrogate has no parental rights to relinquish;" however, they requested that the orphans' court terminate C.J.'s parental rights and grant the proposed adoption. Petition, 5/19/20, at ¶¶ 2, 5(b); Orphans' Court Opinion, 1/12/21, at 1. They omitted any information regarding consents required by 23 Pa.C.S. § 2711 (Consents necessary to adoption). On August 6, 2020, Father and Stepmother filed an amended petition for stepparent adoption, which includes, *inter alia*, the assertion that Father has a Pennsylvania driver's license.

On October 6, 2020, the orphans' court appointed Thomas J. Dempsey,

Jr., Esquire, as guardian *ad litem* ("GAL").  The GAL explained in his appellee

brief:

> It is undisputed that, as a matter of practice in any adoption case, the [o]rphans' [c]ourt does its own investigation.  Here, the investigation revealed the existence of [an] adjudication in the courts of West Virginia, which [Father] had not revealed to the [orphans'] court.  The investigation and the publicly filed documents in the West Virginia litigation establish that [C.J.] had been adjudicated the mother of the [C]hildren and that she had been awarded sole custody.

GAL brief at 8.

The orphans' court held a preliminary hearing on the proposed adoption

on November 19, 2020.  The court issued the following order, from which

Father appeals:

> AND NOW, November 19, 2020, following an appearance before the [c]ourt of Petitioners[, Stepmother] and [Father], *pro se*, and Thomas J. Dempsey, Jr., Esquire, Guardian *ad litem* for the proposed adoptees[,] to address the pending Petition for Stepparent Adoption, as amended ("Petition"), the [c]ourt finds the following from the record and by judicial notice:
>
> Petitioner [Father] has been engaged in litigation in the Circuit Court of Mason County West Virginia at proceedings docketed at No. 16-D-233 which is related to the maternity and custody of [the Children], the three proposed adoptees in this proceeding.  As part of that litigation, the Mason County Circuit Court determined as a matter of fact and law that the Children identified in the Petition were the children of [C.J.] and [Father], that [C.J.] is the mother of the Children, and that [C.J.] was and is entitled to sole legal custody of the Children.
>
> The [c]ourt also takes notice that the Supreme Court of Appeals of West Virginia affirmed the above-referenced adjudication of the Mason County Circuit Court by its Memorandum Decision of November 4, 2019, docketed at No. 18-0566.  **A review of the**

- 3 -

**Petition indicates that Petitioners have failed to indicate that [C.J.] has been adjudicated to be the mother of the Children, that [C.J.] has been awarded sole legal custody of the Children, that any notice of the intent to present the Petition to this [c]ourt was provided to [C.J.], the mother of the Children, or that [C.J.] has been asked to, or consented to, the termination of her parental rights to the Children.**

It is therefore ORDERED that the petition for stepparent adoption of [the Children] filed by [Stepmother] and [Father] is DISMISSED without prejudice.

Order, 11/19/20 (emphasis added).

On December 15, 2020, Father, acting *pro se*, timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The orphans' court filed an opinion pursuant to Rule 1925(a) on January 12, 2021.

On appeal, Father presents the following questions:

1.  Did the [o]rphans' [c]ourt err by *sua sponte* relying on custody proceedings from the State of West Virginia in an action that was filed under the Adoption Act in Pennsylvania?

2.  Did the [o]rphans' [c]ourt err in dismissing the petition for stepparent adoption due to the lack of notice to, and/or consent from, a gestational surrogate?

3.  Did the [o]rphans' [c]ourt err by denying [Father]'s [c]onstitutionally protected rights under [d]ue [p]rocess and [e]qual [p]rotection?

Father's Brief at 9.

The GAL asserts in his appellee brief that this appeal is interlocutory because the November 19, 2020 order is not final.[3] The GAL cites ***Mier v. Stewart***, 683 A.2d 930 (Pa. Super. 1996), where we held that the order dismissing a complaint without prejudice and giving the plaintiff thirty days to file an amended complaint is not a final order. We stated, "By granting a party leave to amend, the trial court has not finally disposed of the parties or their claims." ***Id.*** at 930. The GAL asserts that the November 19, 2020 order is likewise not final because it dismissed Father's and Stepmother's petition without prejudice. We disagree.

It is well-established:

> An appeal may be taken as of right from a final order. Pa.R.A.P. 341(a). A final order is one that disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). . . . [W]hen the dismissal [of a complaint] is without prejudice for the party to file an amended pleading to cure defects, the order is interlocutory, as it does not put the party "out of court." ***Lichtenwalner by Lichtenwalner v. Schlicting***, 552 A.2d 302, 302-03 (Pa. Super. 1989).

***In re Nadzam***, 203 A.3d 215, 219 (Pa. Super. 2019) (determining that the order is a final, appealable order where it left no outstanding claims or parties remaining in the action).

---

[3] This Court issued a rule to show cause order on January 5, 2021, with respect to why this appeal should not be quashed as interlocutory. Father filed a response on January 8, 2021. On January 27, 2021, this Court discharged the order but did not make a determination regarding whether the appeal is interlocutory.

Instantly, the November 19, 2020 order dismissed the petition for stepparent adoption without prejudice; however, unlike the order in *Mier*, it did not grant Father and Stepmother leave to amend their petition. Here, the court dismissed the adoption action for lack of jurisdiction because it found that neither Father nor Stepmother were residents of Allegheny County. Orphans' Court Opinion, 1/12/21, at 1, 3; *see also* 23 Pa.C.S. § 2302 (Venue) (providing, in relevant part, "Proceedings for voluntary relinquishment, involuntary termination and adoption may be brought in the court of the county: "(1) Where the parent or parents or the adoptee . . . reside. . . . (3) With leave of court, in which the adoptee formerly resided.").[4]

In addition, the court dismissed the action for lack of jurisdiction because it found that the West Virginia courts determined that C.J. is the Children's legal mother and awarded her "primary residential and custodial parent of" the Children. *S.U. v. C.J.*, No. 18-0566, 2019 WL 5692550 (Supreme Court of Appeals of West Virginia, filed November 4, 2019) (unpublished memorandum) ("Supreme Court of Appeals"). Therefore, the November 19, 2020 order finally disposed of the parties and their claims without reaching the merits of their adoption action. As such, the order is

---

[4] There is no record evidence that Father, Stepmother, or the Children reside or formerly resided in Allegheny County, Pennsylvania. With respect to Father's Pennsylvania driver's license, the court found that he obtained it "less than a week prior to filing the [p]etition." Orphans' Court Opinion, 1/12/21, at 3.

final and appealable.  ***See Damico v. Royal Ins. Co.***, 556 A.2d 886, 887 (Pa. Super. 1989) (concluding that an order dismissing an action without prejudice for lack of jurisdiction due to the failure to join an indispensable party is final and appealable).

Father's issues are interrelated, and so we consider them together.  In his first issue, he argues that the orphans' court erred in relying on the decision of the Supreme Court of Appeals in dismissing the petition for stepparent adoption.  As best we can discern, Father contends that the West Virginia court proceedings pertained to child custody, and the action he instituted in Pennsylvania pertained to adoption.  Therefore, Father contends that the decision of the Supreme Court of Appeals is irrelevant.

However, Father also contends in his first issue that the decision of the Supreme Court of Appeals is void because it violates his substantive due process rights under the Fourteenth Amendment to the United States Constitution.  Specifically, he asserts that "the State of West Virginia has permitted gestational surrogate[, C.J.,] to infringe upon the rights of [Father] and his children."  Father's brief at 24.  Father asserts, "the gestational surrogate has no parental rights; . . . the gestational surrogate does not have a right "'to object to or receive notice of adoption proceedings.'"  ***Id.*** at 17 (citation omitted).  Similarly, in his second issue, Father asserts that C.J.'s consent to the adoption was unnecessary because she has no parental rights as the gestational surrogate.

In his third and final issue, Father contends that, in dismissing the adoption action, the orphans' court violated his substantive right to due process and equal protection under the Fourteenth Amendment of the United States Constitution by "treating him differently based upon his method of procreation." Father's brief at 36. For the following reasons, we conclude that Father's issues are without merit.

When considering an appeal from an orphans' court order, our standard of review is as follows:

> This court must determine whether the record is free from legal error and the orphans' court's factual findings are supported by the evidence. Because the court sits as the fact-finder, it determines the credibility of the witnesses and on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> *In re Adoption of A.M.B.*, 812 A.2d 659, 662 (Pa. Super. 2002).

*In re Adoption of R.J.S.*, 889 A.2d 92, 95-96 (Pa. Super. 2005).

In his appellee brief, the GAL responds to Father's issues by stating that the orphans' court "was required to give full faith and credit to the adjudication of the West Virginia courts under the full faith and credit clause of the United States Constitution." GAL brief at 14; *see also* USCS Const. Art. IV, § 1 ("Full faith and credit shall be given in each State to the public acts, Records and judicial [P]roceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.").

Indeed, in its Rule 1925(a) opinion, the orphans' court explained that its dismissal of the adoption action "had absolutely nothing to do with the manner in which the [C]hildren were created; rather, the court relied primarily on the fact that it does not have jurisdiction due to" the disposition of the Supreme Court of Appeals.  Orphans' Court Opinion, 1/12/21, at 3-4.

Our review of the disposition reveals that Father initiated the action in West Virginia "shortly before the birth of the twins in an attempt to prevent [C.J.]'s name from being listed on their birth certificates.  Because he obtained no court ruling prior to the filing of their birth certificates, Father now seeks to force an adoption, remove [C.J.] from the twins' birth certificates, and take sole custody not only of the twins, but also [L.J.U., born in November of 2014]. Father admits that he did not label it as an adoption, but in substance, that was exactly what he was trying to accomplish.'" *S.U. v. C.J.*, *supra*.

The Supreme Court of Appeals affirmed the order of the Circuit Court of Mason County, West Virginia ("Circuit Court"), which refused Father's petition for appeal from an order of the Family Court of Mason County ("Family Court") designating C.J. "as the primary residential and custodial parent of the Children."[5]  *S.U. v. C.J.*, *supra*.  The Supreme Court of Appeals disagreed with Father's argument that the Family Court erred "by rejecting his claim that

_____

[5] The Family Court found the Children "have a close emotional bond to [C.J.] and she is 'a fit and proper parent[.]'" *S.U. v. C.J.*, *supra*.

[C.J.] has no rights whatsoever to the parties' three youngest children because she was acting as his gestational surrogate."[6] *Id.* The Family Court determined that Father failed to overcome the presumption set forth in West Virginia Code § 16-5-10(e) that provides, "the woman who gives birth to the child is presumed to be the mother[.]"[7] *Id.* (footnote omitted).

With respect to adoption in Pennsylvania, this Court has stated:

The law as to adoption in Pennsylvania is well-settled: a child may be adopted if its parents have had their parental rights terminated, either by consent or involuntarily. *Once this prior adjudication has been made* and the rights of the natural parents are no more, *the best interest of the child becomes the criterion by which a court must be guided*.

(Emphasis in original).

*In re Adoption of Hess*, 562 A.2d 1375, 1377 (Pa. Super. 1989) (citing

*Matter of Adoption of Sturgeon*, 445 A.2d 1314, 1321 (Pa. Super. 1982)).

Here, Father acknowledged that C.J.'s parental rights have not been involuntarily terminated. He asserts, contrary to the disposition of the Supreme Court of Appeals, that, as the gestational surrogate, C.J.'s consent

_____

[6] Father asserted that he and C.J. have an older child who was born in 2011, and who was not the subject of his adoption action in Pennsylvania. Amended Petition, 8/6/20, at ¶ 13. Likewise, the older child is not a subject of this appeal.

[7] West Virginia Code § 16-5-10(e) fully provides, "[f]or the purposes of birth registration, the woman who gives birth to the child is presumed to be the mother, unless otherwise specifically provided by state law or determined by a court of competent jurisdiction prior to the filing of the certificate of birth." *S.U. v. C.J.*, *supra*.

to the proposed adoption was not required, and she was not required to be notified of the same. We disagree.

Because C.J. was adjudicated the legal mother of the Children in the custody proceedings initiated by Father in the Family Court, her consent to the proposed adoption was required pursuant to Section 2711 of the Adoption Act, 23 Pa.C.S. § 2711(a)(3), which provides:

§ 2711.  Consents necessary to adoption.

**(a)** *General rule.* — Except as otherwise provided in this part, consent to an adoption shall be required of the following:

. . .

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

. . .

23 Pa.C.S. § 2711(a)(3).

It follows that Father was required to serve C.J. with notice. The Adoption Act specifically addresses the notice requirement:

§ 2721.  Notice of hearing.

The court shall fix a time and place for hearing. Notice of the hearing shall be given to all persons whose consents are required and to such other persons as the court shall direct. Notice to the parent or parents of the adoptee, if required, may be given by the intermediary or someone acting on his behalf. Notice shall be by personal service or by registered mail to the last known address of the person to be notified or in such other manner as the court shall direct.

23 Pa.C.S. § 2721; *see also* Pa.O.C. Rule 15.6 (Notice to Persons; Method; Notice of Orphans' Court Proceedings filed on Dependency Docket).

- 11 -

Based on the foregoing, we discern no abuse of discretion or error by the orphans' court in dismissing the petition for stepparent adoption. Father clearly has attempted "to force an adoption" in Pennsylvania, as he did in West Virginia. This Court concluded long ago:

> Pennsylvania courts can[not] ignore with impunity a custody action or decree in the courts of a sister state. The Pennsylvania Adoption Law, which provides for notice "to such other persons as the court shall direct," requires at the very least that notice of the adoption proceedings be given to the parties to a pending custody action or, as here, to grandparents who have been granted custody of the children by the court of another state. . . . The courts of this Commonwealth will not be permitted to become accessories to the conniving act of the parent who attempts to evade a custody order entered by the courts of another state.

*In re Adoption of B.E.W.G.*, 549 A.2d 1286, 1290-91 (Pa. Super. 1988) (reversing order dismissing the grandparents' petition to vacate the adoption decree where the father removed the children from the State of New York in defiance of custody proceedings there pending and surrendering the children for adoption in Pennsylvania). Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/19/2021

- 12 -